92   79
133  636

JESSIE V. GERKE, Appellant, v. CHRISTOPH LUCAS.

**Survey: Center of Section.** Act of Congress of February 11, 1805, provides that boundaries not then run or marked shall be ascertained by running straight lines from established to opposite corners. Code, Iowa, 373, requires county surveyors to be governed by act of congress and the instructions of the secretary of the interior. In 1868, the land department instructed government surveyors that where no such lines had been run, said act required the "intersecting" method, *Held*, this construction is binding upon this court, and the center of a section must be found by that method; i. e., such center is that point where a line drawn from the quarter corner on the east and the quarter corner on the south, to the opposite quarter corner, intersect.

**Practice: CONTINUANCE: COSTS.** Error, if any, in allowing a continuance and refusing to tax costs of term to applicant, is harmless where it does not appear that there were such costs.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTHE, Judge.

FRIDAY, OCTOBER 12, 1894.

ACTION for the possession of real estate. Trial to a jury. Verdict and judgment for defendant. Plaintiff appeals.—*Affirmed.*

*Power & Huston* for appellant.

*Seerley & Clark* and *C. L. Poor* for appellee.

KINNE, J.—I.   Plaintiff claims to be the owner in fee of the southeast one fourth of the southwest one fourth of section 12, township 70, range 3, and avers that defendant claims to be the owner of the south fifty acres of the west one half of the southeast one fourth of the same section, which land adjoins plaintiff's on the east; that defendant has occupied a strip off of the east part of plaintiff's premises, about thirty or forty rods long north and south, and varying from a few feet to several rods in width from the northeast corner of plaintiff's premises southerly, and that defendant refuses to yield possession thereof to plaintiff. Judgment is asked for immediate possession of said ground.   Defendant answered in denial, and, by amendment, sets out his claim of ownership to the land occupied by him.   At the close of plaintiff's testimony, defendant moved the court to direct a verdict for him, which was done, and judgment was entered thereon. To this action of the court, as well as to certain rulings excluding testimony offered by plaintiff, he excepted and appeals.

II.   Since this cause was docketed in this court, appellant, Jessie V. Gerke, has died, and by stipulation on file it is agreed that August Gerke, as executor of the last will and testament of said deceased, Medard Hurst, and Edward Gustave Gerke, minor, by August Gerke, his father and his next friend, shall be substituted as plaintiffs, and the cause proceed to a final determination.   It is therefore ordered that said parties be substituted as parties plaintiff in lieu of Jessie V. Gerke, deceased.

III.  This cause was set for trial on May 16, 1892, in the district court, and when it was about to be called, defendant filed his motion for a continuance, based upon the absence of a material witness, on account of his illness.  The motion was sustained, and plaintiff moved the court to tax the cost of the term, amounting to $——, to defendant. The motion was overruled, and an order entered that the costs of the term should abide the final trial of the case.  To this ruling plaintiff excepted.  In the absence of anything showing that costs were in fact incurred at the term when the continuance was granted, it does not appear there was error in the court's ruling, or that the plaintiff was prejudiced thereby.

IV.  The contention between the parties to this action is as to the proper and legal method of establishing the center of a section of land.  The section in controversy was surveyed and disposed of by the general government without establishing the center of the section.  Plaintiff claims that the correct method to find the center of a section is to run a line from the quarter corner on the east to the quarter corner on the west side of the section, or *vice versa*, and the point halfway on said line between said quarter corners is the center. This is known among surveyors as the "bisecting method."  Defendant claims that, wherever the rectangular system of surveying prevails the only method of establishing the center of a section is by what is known as the "intersecting" method.

By this method straight lines are run from the quarter corner on the east to the quarter corner on the west and from the quarter corner on the south to the quarter corner on the north side of the section, the center being the point where these two lines cross.  The same result would be reached by either method if the quarter corners on the north and south sides of the section were in the exact centers of their respective lines, but it is

sometimes found, as in this case, that, owing to inaccurate original surveys, the quarter corners are located away from the true center of the side lines of the section; and as these corners, when located, are permanent, it will be seen that the two methods may lead to different results. Now, if the center of this section 12 be determined by the bisecting method, then a line run from the quarter corner on the south to the point of bisection would put a part of the land claimed by the defendant in the quarter in which plaintiff's land lies. If, however, the center be determined by the intersecting method, it would appear that defendant is not occupying any of plaintiff's land. We must determine, then, which of these methods of ascertaining the center of a section, which has not been fixed by the government survey, is correct. The two methods, and the difference in their results in this case, will be more readily understood by an examination of the following illustrations:

ILLUSTRATION 1.

NORTH.

"C"

WEST.                                    EAST.

Gerke.    Lucas.

SOUTH.

ILLUSTRATION 2.

The inclosure between the lines in each case represents section 12, and the points indicated by the letter "C" on each diagram show the center of the section as found by the respective methods heretofore described. Plaintiff introduced testimony to show that in 1840 the then county surveyor of Des Moines county, one Avery, in a survey made, established the center of the section at the point indicated in illustration "1" above. Plaintiff proposed to show that this same method of establishing the center of a section was pursued by Avery in all the surveying he did for the county; that from the earliest surveys made in the county, and until about 1868, the centers of sections were established by the bisecting method, and thus entered upon the county surveyor's record, and they had always been recognized and approved as true centers of the sections; that this method of establishing the center of a section was as directed by instructions

from the surveyor general's office at St. Louis, Missouri, of date of 1853, and such instructions were, by authority of the general land office, printed and distributed for use in that department; that it was also authorized and directed by Thomas A. Hendricks, commissioner of the general land office, under date of April 28, 1856, and continued to be the method recognized by the commissioner of the general land office until about 1868; that said method was recognized by the state of Iowa, by express legislation, from December, 1840, to 1851.

She also proposed to introduce in evidence the "Laws, rules, and instructions relating to the duties of county surveyors," as compiled in compliance with chapter 183 of the Acts of the Thirteenth General Assembly, and published by the legislature of Iowa in 1870, which consisted of certain correspondence between surveyors and the secretary of the interior and the commissioner of the general land office—all of which was objected to as immaterial, incompetent, irrelevant, and for other reasons. It is insisted that the action of the court in excluding this evidence, and in directing a verdict for defendant, was error. The land in controversy was entered in October, 1839, and patented in 1841. The statute then in force, in so far as it relates to the ascertainment of the center of sections, was as follows: "Sec. 2. And be it further enacted, that the boundaries and contents of the several sections, half sections, and quarter sections of the public lands of the United States, shall be ascertained in conformity with the following principles, any act or acts to the contrary notwithstanding: *First.* All corners marked in the surveys, returned by the surveyor general, or by the surveyor of the land south of the state of Tennessee, respectively, shall be established as the proper corners of sections or subdivisions of sections, which they were intended to designate; and

the corners of half and quarter sections, not marked on said surveys, shall be placed as nearly as possible equidistant from those two corners which stand on the same line. *Second.* The boundary lines actually run and marked in the surveys returned by the surveyor general, or by the surveyor of the land south of the state of Tennessee, respectively, shall be established as the proper boundary lines of the sections or subdivisions for which they were intended; and the length of such lines as returned by either of the surveyors aforesaid, shall be held and considered as the true length thereof. And the boundary lines which shall not have been actually run and marked as aforesaid, shall be ascertained by running straight lines from established corners to the opposite corresponding corners.   *   *   *"
See the act of congress passed February 11, 1805, and the same provisions, in substance, now found in Revised Statutes, United States, section 2396.   There is no doubt that in 1856, and for a number of years thereafter, the construction given to the above statute by the land department of the government was as contended for by plaintiff; that is, that a center of a section should be ascertained by the bisecting method.   It also appears that about 1868 the land department of the general government modified its instructions to government surveyors, and held that the act of congress heretofore referred to recognized and provided for the "intersecting" method of ascertaining the center of sections, where, as in this case, the center lines had not been run in the original surveys.   That construction has obtained ever since.   By Code, section 373, which was originally enacted by the Thirteenth General Assembly, it is provided:   "In the resurvey and subdivisions of lands by county surveyors, their deputies, or other persons, the rules prescribed by acts of congress and the instructions of the secretary of the interior shall be, in all respects, followed."   In view of this

statute requiring surveyors to follow the act of congress, and the construction placed thereon by the secretary of the interior, and in view of the fact that at the time this act of the legislature was passed, the secretary of the interior had modified the former ruling, and determined that the act of congress provided for the intersecting method of ascertaining the center of a section, we are relieved from determining which construction of the act of congress is in fact correct. We are not at liberty to so construe the act of congress as to set aside the construction placed thereon by the secretary of the interior. Without reference to the proper construction of the act of congress, we plant our decision on the fact that by the act of the legislature the construction placed upon the federal statute by the proper officers of the general government is binding upon us, and that corners, in cases like this, must be ascertained in conformity therewith. This is decisive of the controversy, and the court below properly excluded the offered evidence as tending to show that it was proper to adopt another method. The court properly directed a verdict for the defendant. AFFIRMED.