JULIA S. BOWEN V. LLOYD LYNN ET AL.

FILED FEBRUARY 9, 1905.   No. 13,696.

Criminal Statute: CONSTRUCTION. Section 214 of the criminal code, as amended in 1887, which provides for the recovery by civil action of money lost at gambling, applies to such kinds or descriptions of gambling only as are mentioned in that section.

ERROR to the district court for Adams county: ED L. ADAMS, JUDGE. *Affirmed.*

*John M. Ragan,* for plaintiff in error.

*Tibbets Bros. & Morey, contra.*

AMES, C.

The plaintiff sued to recover $90 paid by her to the defendants pursuant to an agreement executed by them as follows:

"Series 6.                                No. 87.

"The Tontine Investment Co.

"Home Office, Hastings, Neb.

"Diamond Contract.

"Know all men by these presents, that if Julia S. Bowen, the holder hereof, shall first, well and truly, make each and all payments herein provided for to be made by her, at the time and in the manner herein specified, time, manner, and amount of payment, being of the essence hereof, The Tontine Investment Company, of Hastings, Nebraska, will sell and deliver to her, or her legal representatives, or assigns, a commercial, white, clear and perfect diamond of the weight of two carats, the same to be delivered, whenever, after full payment thereof, the contract shall be reached in the order of performance, herein provided.

"The holder hereof duly promises and agrees to pay to the company, at its home office, in the city of Hastings, Nebraska, or to its authorized collector, the full sum of $90 in the following manner, to wit: $5 on delivery hereof, the receipt of which is hereby acknowledged, and $1.25 on the last day of each calendar week, following the date hereof, for sixty-eight consecutive weeks.

"If she shall fail to pay any of said instalments within the week in which it is payable, the said delinquent instalments, together with the additional sum of 25 cents may be paid at any time before the end of the next succeeding calendar week. But if she shall fail or neglect to pay any

of said weekly instalments, at the time and in the manner herein provided, and shall continue in such default for more than one week, then, and in that event, this contract shall, because of such default, become and be wholly null and void, and all payments theretofore made hereon shall be forfeited.

"The company shall employ $1 out of each weekly instalment paid on this and similar contracts in the purchase and delivery of the diamonds required for the performance of such contracts, and may retain all other or further sums paid in hereon, for the purpose of defraying its expenses.

"As often as there is paid to the company enough of said weekly instalments, so that the portion thereof, herein provided for such purpose, is sufficient to provide for the delivery of the diamond required to fulfil the contract next outstanding, and in force, in the order of its issue, at the rate of $95 per carat, which price the company is authorized to pay to or retain for the diamond delivered in the fulfilment thereof, such amount shall be so applied; and the delivery of the diamond, as described in this contract, shall thereupon be made by the company.

"This contract is transferable, but no transfer will be recognized by the company unless first registered by its secretary, for which a registration fee of $1 will be charged.

"In witness whereof, The Tontine Investment Company has caused this contract to be signed by its president and secretary, and its corporate seal to be hereto attached this 2d day of December, A. D. 1899.

(Seal)     "THE TONTINE INVESTMENT COMPANY,
          "By JOHN W. SINK, *President.*
"LLOYD LYNN, *Secretary.*"

That the transaction was gambling, we think, is too plain to admit of dispute. Gambling, according to the common use and understanding of that word, is a generic term, and includes within its meaning every act, game and

contrivance by which one intentionally exposes money or other value to the risk or hazard of loss by chance.

A glance at the foregoing document discloses that by no possibility could more than half of the persons situated like the plaintiff receive anything in return for their payments, and the number less than half who should do so, and who of them should be fortunate or otherwise, was contingent upon events impossible to be foreseen. But notwithstanding the essential identity of the many forms of gambling, there is, both in common speech and by the statute, a rough classification of them which serves for certain practical purposes, and we think that in this view the device under consideration is properly described as a lottery, which has been defined to be a scheme for the distribution of valuable prizes by chance. One of the differences between lotteries and more common forms of gambling is that the betting and the happening of the contingencies according to which the prizes are distributed, both of which are common to all of them, are reduced to sort of a mechanical system and are divorced from every form of present amusement, so that the participants are not necessarily at any time assembled, and it is possible to simulate some of the forms and solemnities of legitimate business. This, we take it, is the kind of offense defined and for which punishment is provided by section 224 of the criminal code, of which the following is a copy:

"If any person shall open, set on foot, carry on, promote, make, or draw, publicly or privately, any lottery, or scheme of chance, of any kind or description, by whatever name, style, or title the same may be denominated or known; or if any person shall by such ways and means expose or set to sale any house or houses, lands or real estate, or any goods or chattels, cash, or written evidences of debt, or certificates of claims, or anything or things of value whatever; every person so offending shall be fined in any sum not exceeding five hundred dollars, at the discretion of the court."

But this section affords the losing party no civil remedy and this suit was accordingly brought, and is sought to be maintained, under the proviso of section 214, which section reads as follows:

"Every person who shall play at any game whatever for any sum of money or other property of value, or shall bet any money or property upon any gaming table, bank, or device, prohibited by law, or at or upon any other gambling device, or who shall bet upon any game played at or by means of any such gaming table, or gambling device, shall, upon conviction, be fined in any sum not less than one hundred dollars, and not exceeding three hundred dollars, or be imprisoned in the penitentiary not more than one year, and upon a second or any subsequent conviction shall be fined in any sum not less than three hundred dollars and not exceeding five hundred dollars, or be imprisoned in the penitentiary not more than two years; *Provided,* That if any person or persons who shall lose any property or money in a gambling house or other place, either at cards or by means of any other gambling device or game of hazard of any kind, such person, the wife or guardian of such, his heirs, legal representatives, or creditors, shall have the right to recover the money or the amount thereof, or the property or the value thereof, in a civil action, and may sue each or all persons participating in the game, and may join the keeper of the gambling house or other place in the same action, who shall be jointly and severally liable for any money or property lost in any game or through any gambling device of any kind, and no title shall pass to said property or money, and in an action to recover the same no evidence shall be required as to the specific kind or denomination of money, but only as to the amount so lost."

The district court dismissed the action and the plaintiff prosecutes error.

We are of opinion that the judgment should be affirmed. The proviso was added to the section by amendment in 1887, and it may be inferred from that fact, as well as

from its own language, that the legislature intended to confine its operation to such forms of gambling as were previously particularly mentioned in the section. Indeed a separate classification of lotteries having previously been made, and continuing in existence, it may well be doubted if a further regulation of this latter offense would have been germane as an amendment of section 214. But at all events the proviso affords a civil remedy to such persons only as shall "lose any property or money in a gambling house or other place, either at cards or by means of any other gambling device or game of hazard." Now it seems to us that this statute is aimed especially and almost exclusively at two things which are absent, or substantially so, from the record in the case at bar, namely, a gambling house or place and a game at cards or other device or some game of hazard. In other words, what the legislature had prominently and principally in mind, in drafting this section, was the unlawful game or amusement and the place where it should be carried on; while in section 224, that to which their attention was mainly directed, was the scheme of chance distribution without reference to amusement or local habitation, the former of which, in such enterprises, may be wholly absent and the latter difficult or impossible of discovery, or ambulatory or even non-existent.

Mrs. Bowen bought her number much as she might have bought any other lottery ticket. The fact that she paid for it in instalments is an insignificant detail. She knew at the time of her purchase, or ought to have known, that whether she would ever derive any benefit from it, or whether she would lose her money, depended upon future contingencies which no one could foresee. Chief among them were how many holders of prior numbers would forfeit their claims, and how much in the aggregate they would pay in before doing so, and how many persons could be 'induced subsequently to participate, and how much they would contribute to the fund, and finally with what fidelity the persons in charge of the scheme should execute

their unlawful trust. But there was no "gambling house or place," no cards, dice, roulette wheels or other devices for playing games, no assemblage of participants in the scheme, no games or pastimes, and no amusement except for the recipients of the money. It was just a plain lottery. For these reasons we recommend that the judgment of the district court be affirmed.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.