[L. A. No. 3435.    In Bank.—August 13, 1915.]

## MARY E. WILLARD et al., Respondents, v. VALLEY GAS & FUEL COMPANY (a Corporation), Appellant.

NEGLIGENCE—EXPLOSION OF GAS—DESTRUCTION OF HOUSE—BURDEN OF PROOF.—In this action to recover the value of a house and its contents destroyed by fire caused by an explosion of gas, the evidence showed that an employee of the defendant company, in an endeavor to discover and remove the cause of a flickering in the gaslight of the house, entered a room in the basement, lighted the gas in a stove there and determined that the flickering was due to the presence of water in the pipes, which he undertook to remedy by removing a plug from the "drip pipe" which led down from the supply pipe, and thus let the water out; it further appeared that the "pilot light" in a Ruud heater, which was located six feet from the place where the work was being done, was lit at the time the employee entered the room, although he testified that he put it out after he had removed the plug from the "drip pipe." *Held*, that the origin of the fire having been shown to be an explosion of gas, the burden was placed upon the defendant of proving freedom from blame, because explosions do not ordinarily occur when such work as was being performed is executed in a careful manner; and that the trial court did not err in holding that the defendant failed to successfully meet this burden.

ID.—MEASURE OF DAMAGES—VALUE OF FURNITURE—TESTIMONY OF NONEXPERTS.—The owners of furniture destroyed were properly permitted to testify regarding its value, even though they were nonexperts, as the fact that they did not possess expert knowledge of the value of furniture generally went rather to the weight than to the admissibility of their testimony.

ID.—MARKET VALUE—ARTICLES HAVING NONE.—In such a case the rule to be applied as the measure of damages for destroyed property having no market value is that fixed by section 3333 of the Civil Code as the amount which would compensate the owner for all detriment proximately caused by its destruction whether it could have been anticipated or not.

ID.—SCRAP BOOKS—TESTIMONY OF OWNER.—Scrap books could have no market value, but they might be of great value to a literary man, and it is therefore proper for the owner to testify regarding their value to him, and the same rule is applicable to a rare old book written by one of the ancestors of the owner.

ID.—SUBSEQUENT CONDITION OF HEATER—ADMISSIBILITY OF TESTIMONY. There was no error in allowing plaintiff to testify to the condition of the heater four or five days after the fire, as the lapse of time goes rather to the weight than the admissibility of the evidence, and the defendant was not injured by such evidence, even if its admission was erroneous, where the condition of the heater at that time tended to corroborate the testimony of defendant's employee that he had turned off the "pilot light."

ID.—DECLARATIONS OF DEFENDANT'S AGENT—WHEN NOT PART OF RES GESTAE—INADMISSIBILITY OF.—It was prejudicial error to admit the testimony of one of the plaintiffs in relation to declarations of defendant's employee, made an appreciable time after the explosion, that he had "turned off the wrong thing." Such statement was not a part of the *res gestae*.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. George H. Hutton, Judge.

The facts are stated in the opinion of the court.

Porter & Sutton, for Appellant.

Denis & Loewenthal, and Waterman & Green, for Respondents.

MELVIN, J.—Defendant appeals from the judgment and from an order denying its motion for a new trial.

The suit was for the recovery of the value of a house and its contents destroyed by a fire which was found to be due to the negligence of the defendant. The plaintiffs, Mary E. and Charles D. Willard, wife and husband, resided in a house near Pasadena. They owned the house and its contents. One morning, Mrs. Willard noticed that when the gas in the house was lighted it flickered badly. She notified the defendant corporation and in due time an employee of the latter was sent to the house. This man, Mr. Mills, lighted the gas in a stove in the laundry, a room in the basement of the house, and he explained to Mrs. Willard that the flickering of the gas flame was due to the presence of water in the pipes. He

undertook to remedy the condition by removing a plug from the "drip pipe" which led down from the supply pipe, and letting the water run into a bucket which Mrs. Willard had procured for him.   According to the testimony of Mrs. Willard he was engaged at the drip pipe with the bucket when she left the laundry and started to go upstairs.   About forty seconds later, she heard an explosion and she called to Mr. Mills asking him what was the matter.   He requested her to get a hose which she did and it was attached to a faucet, but owing to the inadequate pressure of water and the absence of a nozzle they found it impossible to get any water to the fire that had been started by the explosion.   The house and a great portion of the contents were destroyed.   Mrs. Willard also testified to two conversations with Mr. Mills during the time that the house was burning.   In one he admitted his inability to turn off the supply of gas from the house and the other as related by her was as follows:

"I went up to him and asked him what he did.   I says: 'What did you do?   What is the matter?'   And he said, 'I turned off the wrong thing.'   And I said, 'Didn't you turn the gas off?'   And he said, 'No, I don't know.' "

She also stated that when she and Mr. Mills first went to the laundry the "pilot light" in the Ruud heater was burning.   She did not notice whether or not he turned off the light before removing the plug from the "drip pipe."   This witness also stated that she knew the explosion did not occur in the heater because she saw that appliance after the fire and the doors were intact.

It appeared by testimony in which there was no material conflict that the heater, which was located about six feet from the place where the cap was removed from the end of the drip pipe, was a mechanism in which a small light was kept constantly burning.   Whenever the water was turned on and allowed to flow from the connecting pipe in any part of the house the pressure of the moving fluid in the heater automatically admitted quantities of gas to a large burner and this gas being ignited from the flame at the small burner heated the water for use in the house.   When the water was turned off the gas was again shut off automatically from the large burner.   Each of these burners was so arranged that the gas could be entirely shut off from it by turning a stop cock.

Mr. Mills testified virtually in accordance with the account given by Mrs. Willard. He said that after he loosened the plug in the drip pipe very little water came out. He concluded therefore that the stoppage was due to naphthalene. "I knew," he testified, "that in order to get naphthalene out, I would have to take the plug clear out of the drip, so I went to the Ruud heater and shut off the pilot light and looked in to see that the flame was out; I then went back and, being satisfied that there was no fire around there in the room, went back and took the plug clear out of the drip and began tapping on the drip with the handle of my pipe wrench to loosen up the naphthalene crystals. While I was tapping on the drip and the naphthalene was coming out, and before it was all out, there was a burst of flame from around the Ruud heater; it came up around me and burnt my hands and face so I had to get out of there. The side of my face next to the Ruud heater was burned, and both of my hands were burned. The heater was probably six feet away from the drip."

Mr. Willard told of examining the heater four or five days after the fire. At that time the doors were all intact, and there was nothing to suggest that an explosion had occurred within the heater. The "pet cock" connected with the pipe which had supplied the small light was turned off, he said, and the one on the pipe leading to the large burner was open.

It was also in evidence that there had been trouble with the Ruud heater, at times, owing to the fluctuating pressure of water which would occasionally cause the gas to be turned into the large burner without the agency of any one in the house, but that this condition had been remedied by the installation of a new service pipe and that the heater had been put in good order shortly before the fire. Mrs. Willard had obtained hot water from a faucet in the house in the usual manner that morning.

Appellant insists that its agent was not negligent; that the explosion may have occurred from one of a number of causes for which it could not be held responsible; that the court erred in failing to apply the proper measure of damages in determining the amount of the judgment, and that serious errors of law were committed in certain rulings of the court.

Appellant introduced testimony tending to show that the drip pipe and meter were installed within the laundry and not outside of the house by direct order of the plaintiffs and

against the advice of its foreman, but there was no evidence
that there was any inherent danger of explosion of gas due
to the placing of these appliances indoors.

Appellant insists that having proven by its witness that he
took all reasonable precautions to avoid an explosion the bur-
den shifted to plaintiffs to show that the fire was the result
of some preventable cause which the servant of the gas com-
pany neglected to remove. Undoubtedly that would be true
if the court, sitting as a jury, was bound to accept and act
upon the testimony of Mr. Mills. In proving, by the wit-
nesses of both sides, that the origin of the fire was an explo-
sion of gas, plaintiffs placed upon the defendant the burden
of proving freedom from blame, because explosions do not
ordinarily occur when work such as Mr. Mills was performing,
is executed in a careful manner. (*Judson* v. *Giant Powder
Co.*, 107 Cal. 549, 552, [48 Am. St. Rep. 146, 29 L. R. A. 718,
40 Pac. 1020] ; *Linforth* v. *San Francisco Gas etc. Co.*, 156
Cal. 60, [19 Ann. Cas. 1230, 103 Pac. 320].) The real ques-
tion, then, is whether or not defendant successfully met this
burden. Appellant cites *Union etc. Co.* v. *San Francisco Gas
etc. Co.*, 168 Cal. 59, [141 Pac. 807], in support of its conten-
tion that the burden was upon plaintiffs to overcome the tes-
timony of its servant. The citation is not apt because in that
case we were considering a record which did not disclose the
origin of the fire as being an explosion of gas. Here it is
shown incontestably that an explosion did cause the fire and at
a time when gas was being liberated from the drip pipe by
the servant of the defendant corporation. Mr. Mills had
shown by his own testimony that he was deficient in care and
caution because he loosened the plug at the end of the pipe
and allowed some gas to escape before he paid any attention
to the Ruud heater. He did testify that before the plug was
entirely removed he shut off the entire gas supply from the
heater; looked carefully to see if any trace of fire was left;
and saw none. The court might well have concluded that
one who began a dangerous piece of work so carelessly was
not accurate in his account of the subsequent precautions
which he said that he took, or that he did not inspect the in-
terior of the heater with the degree of care which the situa-
tion, demanded. In short, the court was clothed with the
power of viewing the testimony of the witness in the light of
all of the circumstances surrounding him and the events which

he was undertaking to relate. Evidently the court did not believe that the defendant met the burden of proof adequately. Two theories were advanced by the defendant as possibly accounting for the fire, one based upon a possible defect in the keys for shutting off the gas supply in the heater and the other upon the possible retention of a spark in the soot of the pipe within the heater. Both theories involve the existence of fire in the heater after the opening of the drip pipe and the release of gas into the room, but defendant seeks to relieve itself from responsibility by asserting that its agent did all that reasonable prudence required when he turned the stop cocks and examined the interior of the heater for signs of fire. The heater is not described in the record by drawings or other pictorial media but there was a picture of it before the superior court at the trial. It may be that so open to inspection were all of its interior parts that a failure to observe any fire within the heater, if any existed, argued a very careless inspection on the part of Mills. Under the circumstances we cannot say that the court erred in deciding that the defendant had not met and had not overthrown the burden of proof cast upon it by the establishment of the fact of the explosion which occurred while defendant's agent was allowing gas to escape into the laundry of the house of the plaintiffs.

Appellant complains that the plaintiffs were permitted to testify regarding the value of certain articles although the witnesses were not shown to be experts and that they were not confined to the *market value* of the property destroyed, but were permitted to state the value to them of property, which, it is asserted, could only have a sentimental value. It was proper to let the owners of the furniture testify regarding its value even though they were not experts. The fact that they did not possess expert knowledge of values of furniture generally went rather to the weight than to the admissibility of their testimony. (*Tubbs* v. *Garrison,* 68 Iowa, 48, [25 N. W. 921] ; *Union Pacific etc. Ry. Co.* v. *Williams,* 3 Colo. App. 529, [34 Pac. 731] ; *Thomason* v. *Capital Insurance Co.,* 92 Iowa, 79, [61 N. W. 843] ; *Jeffries* v. *Snyder,* 110 Iowa, 362; *Lincoln Supply Co.* v. *Graves,* 73 Neb. 215, [102 N. W. 457].) But admittedly some of the property had no market value. The testimony of Mr. Willard related to certain scrap books and other data which he had used and was accustomed

to use in his occupation as a writer. Some of these contained the results of collecting clippings during many years. The fire also destroyed a rare book, written by one of Mr. Willard's ancestors and entitled the "Body of Divinity." It is contended that the measure of damages to be applied to property having no market value is that laid down by section 3355 of the Civil Code and that defendant having possessed no notice of the value of this sort of property to the owner before the fire, it may not be held liable for the value thereof as established by the evidence. But respondents contend that the rule to be applied to property having no market value is fixed by section 3333 of the Civil Code as the amount which would compensate the owner for all detriment proximately caused by its destruction "whether it could have been anticipated or not." This contention is correct. Section 3354 of the Civil Code fixes the market price as the amount recoverable by the owner of property who has been deprived of its possession; but that section excepts from its provisions those of the two following sections. It therefore appears that section 3355 deals with property which has a market value and also a peculiar value to the owner and not with property having no market value. It is clear that the scrap books could have no market value but that they might be of great value to a literary man. It was therefore proper for Mr. Willard to testify regarding their value to him. The same rule is applicable to the old book. In *Southern Express Co.* v. *Owens,* 146 Ala. 425, [119 Am. St. Rep. 41, 9 Ann. Cas. 1143, 8 L. R. A. (N. S.) 369, 41 South. 752], the rule with reference to manuscripts having especial literary value to their owners is discussed. The property destroyed was the unprinted manuscript of a book, to the preparation of which the author had devoted much time and vast labor. The court said, among other things, "Ordinarily, where property has a market value that can be shown, such value is the criterion by which actual damages for its destruction or loss may be fixed. But it may be that property destroyed or lost has no market value. In such state of the case, while it may be that no rule which will be absolutely certain to do justice between the parties can be laid down, it does not follow from this, nor is it the law, that the plaintiff must be turned out of court with nominal damages merely. Where the article or thing is so unusual in its character that market value cannot be predi-

cated of it, its value, or plaintiff's damages, must be ascertained in some other rational way, and from such elements as are attainable." (See, also, *Spicer* v. *Waters,* 65 Barb. (N. Y.) 235.)

Mr. Willard was allowed to testify regarding the condition of the heater four or five days after the fire. This is assigned as error but we think the lapse of time of which the appellant complains goes rather to the weight than to the admissibility of this testimony. But even conceding error we fail to see how defendant was injured because the condition of the heater as described by Mr. Willard tended to corroborate Mr. Mills' statement that he had turned off the "pilot light."

The court erred in admitting the testimony of Mrs. Willard in relation to the declarations of Mills, made after the explosion, that he had "turned off the wrong thing," etc. This statement was made after the explosion and after the efforts of Mrs. Willard and Mr. Mills to put out the fire, but just how long afterward does not appear. It was shown, however, that Mr. Mills had retired to the road, and that shortly after making the statement he went away. The statement was not a part of the *res gestae* and should have been excluded. (*Durkee* v. *Central Pacific R. R. Co.,* 69 Cal. 535, [58 Am. Rep. 562, 11 Pac. 130] ; *Lissak* v. *Crocker Estate Co.,* 119 Cal. 444, [51 Pac. 688] ; *Luman* v. *Golden Ancient Channel Mining Co.,* 140 Cal. 709, [74 Pac. 307] ; *Estate of Gleason,* 164 Cal. 762, [130 Pac. 872] ; *Estate of Jones,* 166 Cal. 108, 117, [135 Pac. 288].) That defendant was materially injured by the admission of this testimony there can be no doubt.

We have examined the other assignments of error and have found none of them so serious as to require us to discuss them.

The judgment and order are reversed.

Shaw, J., Henshaw, J., Lorigan, J., and Angellotti, C. J., concurred.

SLOSS, J., Concurring.—I concur in the judgment, believing that prejudicial error was committed in allowing proof of declarations by Mills after the explosion.

I think, however, that the court below applied too liberal a rule in estimating damages. The plaintiffs were permitted to show that some of the articles destroyed—for example the

book entitled "The Body of Divinity"—had a special or peculiar value to Mr. Willard by reason of sentimental associations. Whatever may be the rule elsewhere, I think that under section 3355 of our Civil Code such sentimental value cannot be recovered except as against one "having notice thereof or a willful wrongdoer." Similar considerations apply to the book containing photographs and keepsakes of a daughter of the Willards.

The scrap books used by Mr. Willard in his literary work stand on another ground. There was no definite sum for which these books could have been sold. In that sense they had no market value. But they had a real money value to Mr. Willard or to any one else capable of using them in the way in which he used them. I think there is nothing in the code sections which prevents the plaintiff from recovering such pecuniary value, although the articles can neither be sold nor replaced in the open market. This is not the "peculiar value" mentioned in section 3355. In a case of this kind the value to the plaintiff, which is the measure of damages (Civ. Code, sec. 3354) must be ascertained "from such elements as are attainable" (*Southern Express Co.* v. *Owens*, 146 Ala. 425, [119 Am. St. Rep. 41, 9 Ann. Cas. 1143, 8 L. R. A. (N. S.) 369, 41 South. 752]), such as the difficulty and expense to which plaintiff was put in acquiring the property, the nature and character of the use to which it was put by him, and the like. All of these elements being shown, the value is to be determined by the court or jury by the exercise of a sound discretion. The estimate of the value made by the plaintiff or any other witness is not, of course, conclusive.

Rehearing denied.