Filed 10/28/24  Mowery v. El Centro Animal Clinic CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SIERRA MOWERY, | D082522 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. ECU000723) |
| EL CENTRO ANIMAL CLINIC, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Imperial County, Jeffrey B. Jones, Judge.  Affirmed.

Law Office of Scott Pomerantz and Scott Pomerantz for Plaintiff and Appellant.

Collins + Collins, Robert H. Stellwagen, Jr., Tiffany E. Garrick, and James C. Jardin for Defendant and Respondent.


Sierra Mowery appeals the judgment in her action for damages against El Centro Animal Clinic, Inc. (the Clinic) for negligently causing the death of her dog Bitty.  Mowery contends the trial court erred by ruling in limine that

her damages were limited to the veterinary expenses she incurred in trying to save Bitty's life. We affirm.

## I.

## BACKGROUND

### A. *Bitty's Death*

Mowery owned Bitty, a six-year-old, pure-bred Irish wolfhound. After Mowery noticed Bitty seemed lethargic and had vomited in several places around the house, she took the dog to the Clinic. Mowery told Oliver C. Kenagy, a veterinarian, that she feared Bitty's ingestion of a foreign object might have caused an obstruction of the gastrointestinal tract. Kenagy said Bitty "probably ate something 'rotten' which was causing transient stomach discomfort." Kenagy palpated Bitty's abdomen, noticed nothing abnormal, injected several medications, and prescribed others. He did not recommend any diagnostic tests to rule out the possibility of a gastrointestinal obstruction. Mowery took Bitty home.

By the following morning, Bitty's condition had deteriorated. The dog would not swallow, appeared dazed, and could not stand on its own. Mowery took Bitty to the San Diego Pet Emergency & Specialty Center, where the dog was found to be in septic shock. An X-ray film revealed a gastrointestinal obstruction. After two unsuccessful surgical attempts to repair the damage from the obstruction, Bitty's lungs began to fill with fluid, and Mowery decided to euthanize the dog.

### B. *Mowery's Complaint*

Mowery sued the Clinic for veterinary malpractice.[1] She alleged the Clinic breached the standard of care and caused Bitty's death by failing to

---

[1] Mowery also sued Kenagy and asserted a count for fraudulent nondisclosure. Kenagy accepted Mowery's pretrial offer to compromise and

conduct radiological studies to detect the gastrointestinal obstruction, failing to hydrate Bitty, and failing to refer Mowery to a specialist treatment facility for surgery. Mowery prayed for general damages, recovery of more than $30,000 in veterinary expenses, prejudgment interest, costs, and all other relief the court deemed just and equitable.

C.     *In Limine Motions*

The Clinic filed four motions in limine, two of which are at issue in this appeal. By motion No. 1, the Clinic sought to exclude "all inquiries into and testimony concerning 'emotional distress,' grief, or loss of companionship, or any physical consequence of same allegedly sustained by [Mowery] in consequence of the negligent injury and death of [Bitty]." The Clinic argued damages for such injuries were, as a matter of law, not recoverable for negligent injury to a pet, and any evidence of such injuries would be irrelevant, misleading, and prejudicial. By in limine motion No. 4, the Clinic sought to exclude evidence of the peculiar value of the dog. Although the trial court's register of actions lists the motion as having been filed, Mowery did not include a copy in the record on appeal.

According to the trial court's register of actions, Mowery filed opposition to both in limine motions, but she included only the opposition to motion No. 4 in the record on appeal. There she argued a pet is comparable to an heirloom, in that each is precious to its owner but has no market value; and damages for a lost pet should be established the same way as damages for a lost heirloom, namely, by testimony of the owner on the value of the thing to her. Mowery further argued that because Bitty died, recovery of only veterinary expenses would not provide full recovery, and the dog's value must

agreed to entry of judgment against him for $9,999. (Code Civ. Proc., § 998.) He is not a party to this appeal. Mowery dismissed the fraudulent nondisclosure count with prejudice. That count is not at issue on appeal.

3

be established by testimony from Mowery "as to how she acquired Bitty, her time spent training and working with Bitty[,] and Bitty's nature and character."

D.    *Trial Management Conference*

At the trial management conference, Mowery's counsel told the trial court she planned to call Mowery and one or two treating veterinarians to testify.  The trial court noted liability seemed to be conceded and asked what the veterinarians would testify about.  Mowery's counsel replied that the Clinic admitted breach of the standard of care but not causation.  The Clinic's counsel stated the Clinic would stipulate that it breached the standard of care, the breach was a cause of Bitty's death, and the reasonable value of the harm was the veterinary expenses Mowery incurred in trying to save Bitty's life.  When the court asked Mowery's counsel what other damages Mowery sought, he said:  "There was money spent on veterinarian expenses to try to save the property.  [¶] . . . [¶]  And that's one damage.  Then there was the loss of the property, in addition to that."  The court expressed doubt Mowery could recover both "the cost to repair, here the vet bills," and "the diminution in the value of the [dog]."

When the trial court turned to the in limine motions, it granted the Clinic's motion to exclude evidence of emotional distress, grief, or loss of companionship, on the ground that damages for such injuries were not available for veterinary malpractice.  On the Clinic's motion to exclude evidence of Bitty's peculiar value, the court engaged in a lengthy discussion with Mowery's counsel about the evidence she intended to put on to establish the dog's value.  The court stated the "veterinarian bills" were recoverable as "based on the peculiar value of the pet," but "emotional distress," "care, comfort and society" were unrelated to the dog's economic value and were not

4

recoverable. The court repeatedly asked Mowery's counsel for an offer of proof as to what evidence other than the veterinary expenses he intended to present to establish Bitty's value. Mowery's counsel responded that "there is a special value that does not hinge on economic value" and that Mowery sought "[t]he special value of the family pet to the owner."

When the court pressed for more specificity, counsel stated Mowery would testify about: (1) how she acquired Bitty; (2) time spent acquiring Bitty; (3) time spent training Bitty; (4) time spent with Bitty; (5) how often she traveled with Bitty; (6) things she purchased for Bitty; (7) what she fed Bitty (8) money spent on toys, collars, leashes, and other pet accessories; and (9) the significance of Bitty in her daily life. The Clinic's counsel argued these items did not show "a peculiar value" or "a unique value to [Mowery] that [they] would not have to any other owner because every other owner with any good dog like Bitty would also feed and care for and go on trips with [the dog]."

The court noted that generally the measure of damages for the death of a dog is "the value of the dog at the time of its death if caused by negligence or other wrongful conduct," but an exception allows recovery of veterinary expenses exceeding the dog's value "because the dog has peculiar economic value to its owner." The court went on to state that a pet's peculiar economic value "does not mean the total amount that [the owner] ha[s] invested in the animal because, of course, [the owner] received the benefit along the way." For the court, "the vet bill after the dog is injured [is] different," because that expense is "a result of someone else's negligence." Mowery's counsel argued that when a dog is negligently killed, the owner should recover not only the out-of-pocket expenses for the unsuccessful efforts to save the dog's life but also an amount to compensate for the loss of the dog.

5

The court then asked, "What is the value of the dog, by the way? What does a dog like that go for?" Mowery's counsel responded variously that "adult family pets don't have a market value," "our position is there's not a market value," and Bitty had "[z]ero market value." Counsel said Mowery was seeking "[t]he value of the dog to the owner, which we know is as least as much as the vet bills." The court responded that Mowery "is allowed to recover the damages incurred by reason of the negligence of the [Clinic]. One element of those damages, and the only one [the court] heard so far, being the veterinarian bills expended to try to save the dog." When the court said it would allow as additional damages the market value of Mowery, counsel responded: "Adult family pets don't have a mar[ke]t value," and presentation of evidence on that issue was "not going to happen."

The court also asked Mowery's counsel for his "view of the economic value of the dog." Counsel was "not sure how to distinguish that from market value," which he conceded Bitty did not have, and went on to admit the dog generated no income, was not in commercials or dog shows, and had no breeding value. Counsel refused to give the court a number and stated he was "going to leave it to the fact finder to determine what the value of the property was to the owner." In counsel's view, "Bitty should be valued [like] a family heirloom," and "the facts and circumstances of [Mowery's] ownership of Bitty would be used as evidence to support such a value."

The court "grant[ed] the motion and limit[ed] the evidence as to the value of the dog to . . . its economic value," which the court ruled was "either the value of the dog or the cost to repair or the veterinarian bills that were expended. [¶] And here, I don't think we have anything but the veterinarian bills as far as . . . economic value of the dog."

6

E.     *Stipulated Judgment*

The parties stipulated to entry of judgment in favor of Mowery and against the Clinic on the veterinary malpractice count for $24,812.84, which was the amount of veterinary expenses less a $9,999 offset for the settlement with Kenagy.  The judgment also awarded Mowery $12,659.11 in prejudgment interest.

II.

DISCUSSION

A.     *Appellant's Contentions*

Mowery contends that limiting to veterinary expenses the damages an owner of a negligently killed pet with no market value may recover is unjust and inconsistent with case law allowing an owner of other negligently destroyed personal property with no market value to recover the special value of the property to the owner.  She acknowledges California courts have held that reasonable veterinary expenses are a proper measure of value when the pet is negligently injured and survives, and that damages for emotional distress and loss of companionship are not compensable when a pet dies due to another's negligence.  Mowery argues, however, that the value of a pet to its owner necessarily includes some sentimental value, not just economic value; the difficulty of measuring the value does not relieve the tortfeasor of the obligation to compensate the owner for its loss; and its measurement must be left largely to the discretion of the trier of fact.  She also makes policy arguments that limiting damages for tortiously killed pets would harm Californians, and any such limitation is a matter for the Legislature, not the courts.  Mowery claims the judgment and the trial court's in limine rulings should be reversed and the matter "remanded with further instructions to the trial court," but she does not specify what those instructions should be.

7

B.  *Appealability and Standard of Review*

A stipulated judgment, though ordinarily not appealable, is appealable where, as here, the appellant stipulated to facilitate an appeal of an adverse ruling on a key issue and the judgment resolved all claims among all parties. (*Martinez v. Robledo* (2012) 210 Cal.App.4th 384, 387, fn. 2 (*Martinez*); *McMahon v. Craig* (2009) 176 Cal.App.4th 1502, 1508, fn. 1 (*McMahon*).)  The proper measure of damages is a legal question we review de novo.  (*Coziahr v. Otay Water Dist.* (2024) 103 Cal.App.5th 785, 820-821; *Martinez*, at p. 387, fn. 2.)

C.  *Measure of Damages for Negligently Caused Death of Pet*

Dogs and other pets are personal property of their owners (Civ. Code, § 655; Pen. Code, § 491; *Roos v. Loeser* (1919) 41 Cal.App. 782, 785 (*Roos*)), and "their value is to be ascertained in the same manner as the value of other property" (Pen. Code, § 491, subd. (a)).  "It may be the market value, or some special or peculiar value to its owner to be ascertained by reference to its usefulness or other qualities."  (*Roos*, at p. 785.)  The "peculiar value" of a dog "refer[s] to special characteristics," such as "pedigree, reputation, age, health, and ability to win dog shows," which "increase the animal's monetary value, not its abstract value as a companion to its owner."  (*McMahon, supra*, 176 Cal.App.4th at p. 1518; see *King v. Karpe* (1959) 170 Cal.App.2d 344, 349 [value of destroyed cow may include breeding potential]; *Dreyer v. Cyriacks* (1931) 112 Cal.App. 279, 284 [value of dog that appeared in films may be based on earnings].)  Most pets have no such peculiar or special value, however, and "there is generally no market for *other people's* pets."  (*Martinez, supra*, 210 Cal.App.4th at p. 390.)

When personal property with no market value is negligently destroyed, the measure of damages is "the amount which will compensate for all the

8

detriment proximately caused thereby, whether it could have been anticipated or not." (Civ. Code, § 3333; see *Willard v. Valley Gas & Fuel Co.* (1915) 171 Cal. 9, 15 (*Willard*).)  For such property, the value or the owner's damages " 'must be ascertained in some other rational way and from such elements as are attainable,' " including testimony of the owner "regarding [the property's] value to him." (*Willard*, at pp. 15–16 [owner of negligently destroyed scrapbooks with no market value could testify about their value to him in his occupation as a writer].)  Following *Willard*, one Court of Appeal held that allowing an owner of a tortiously injured pet to present evidence of costs incurred to treat the pet was "a 'rational way' of demonstrating a measure of damages apart from the [pet's] market value." (*Kimes v. Grosser* (2011) 195 Cal.App.4th 1556, 1561 (*Kimes*).)  Another Court of Appeal agreed with *Kimes* and added that "allowing a pet owner to recover the reasonable costs of the care and treatment of an injured pet reflects the basic purpose of tort law, which is to make plaintiffs whole, or to approximate wholeness to the greatest extent judicially possible." (*Martinez, supra*, 210 Cal.App.4th at p. 390; see Johns, Cal. Damages:  Law and Proof (5th ed. 2024) Property Damage § 6.23, p. 6-32 [in addition to lost market value, owner of injured animal "may . . . recover other special damages for items such as veterinarian fee, medical bills, transportation costs, and other special expenses incurred as a proximate result of the defendant's tort"].)  Thus, the owner of a tortiously injured pet with no market value may recover the reasonable and necessary treatment costs and other special expenses attributable to the injury.

An owner of a pet that dies from the negligence of another, however, may not recover damages for the emotional distress the owner suffers as a result of the negligence. (*Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1605 (*Plotnik*); *McMahon, supra*, 176 Cal.App.4th at pp. 1509–1515.)  Nor

may such an owner recover damages for the loss of the companionship of the pet caused by the negligence. (*McMahon*, at p. 1518–1520.)

D.     *Trial Court's In Limine Rulings*

Applying the statutory and case law discussed above, we must now determine whether Mowery has shown the trial court committed prejudicial error in its in limine rulings regarding the damages she could recover for Bitty's death. (See, e.g., *D.D. v. Pitcher* (2022) 79 Cal.App.5th 1047, 1057 [appellant has burden to show prejudicial error]; *Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 403 [same].) As we shall explain, she has not done so.

During the trial management conference at which the trial court ruled on the in limine motions, the court had an extensive discussion with Mowery's counsel about how to measure the damages for Bitty's death. (See pt. I.D., *ante*.) During that discussion, counsel repeatedly admitted Bitty had no market value and stated he would not present any evidence of such value. When the court later asked about Bitty's economic value, Mowery's counsel refused to offer a dollar amount and admitted the dog generated no income for Mowery, did not appear in commercials or dog shows, and was not useful for breeding. Counsel thus conceded the measure of damages he proposed was neither market value nor peculiar value as those terms have been used in the case law. (See, e.g., *McMahon, supra*, 176 Cal.App.4th at p. 1518; *Roos, supra*, 41 Cal.App. at p. 785.)

That concession left as the measure of damages the one generally used in tort cases, which is "the amount which will compensate for all the detriment proximately caused [by the tort], whether it could have been anticipated or not." (Civ. Code, § 3333; see *Willard, supra*, 171 Cal. at p. 15; *Kimes, supra*, 195 Cal.App.4th at p. 1560.) The parties and the trial court

10

agreed that measure of damages included the veterinary expenses Mowery incurred in trying to save Bitty's life after the Clinic negligently failed to diagnose the gastrointestinal obstruction that led to the dog's death. (See *Martinez, supra*, 210 Cal.App.4th at p. 392; *Kimes*, at p. 1562.) After the court repeatedly pressed Mowery's counsel for an offer of proof on what other economic losses Mowery claimed as a result of the alleged veterinary malpractice, counsel finally answered that Mowery would testify about how she acquired Bitty, the time she spent on the acquisition, what she fed Bitty, the pet accessories she bought for Bitty, the time she spent with Bitty, and Bitty's significance in her life. None of these items, however, constitutes "detriment proximately caused by" the alleged malpractice. (Civ. Code, § 3333.) Whatever expenses Mowery incurred in acquiring, maintaining, and spending time with Bitty would have been incurred regardless of the Clinic's alleged negligence in failing to diagnose the gastrointestinal obstruction that led to Bitty's death. And, as the trial court observed, those expenses cannot be considered "detrimental" to Mowery, because she derived benefit from them during Bitty's lifetime.

Mowery's counsel also asserted during the colloquy with the trial court on the measure of damages that "Bitty should be valued [like] a family heirloom," and "the facts and circumstances of [Mowery's] ownership of Bitty would be used as evidence to support such a value." Since the value of a family heirloom often is largely, if not exclusively, sentimental (see, e.g., *Windeler v. Scheers Jewelers* (1970) 8 Cal.App.3d 844, 852), it seems to us this was an offer to put before the jury inadmissible evidence of the strong emotional attachment Mowery had to Bitty as a companion. The trial court correctly ruled, in granting the Clinic's motion in limine No. 1, that a pet owner may not recover from the party that negligently caused the pet's death

11

damages for emotional distress or loss of companionship.  (*Plotnik, supra*, 208 Cal.App.4th at p. 1605; *McMahon, supra*, 176 Cal.App.4th at pp. 1515, 1519–1520.)  Implicitly recognizing this legal limitation, Mowery concedes in her reply brief that she does not seek such damages for Bitty's death.

In sum, we conclude Mowery has not shown the trial court erred by limiting the evidence of her damages to the veterinary expenses incurred in trying to save Bitty's life.  The parties agreed those expenses were recoverable, and they were the only ones Mowery identified as "detriment proximately caused" by the Clinic's alleged veterinary malpractice.  (Civ. Code, § 3333.)  On this record, the court correctly ruled the veterinary expenses constituted the applicable measure of damages.[2]

---

[2]    In reaching this conclusion, we have applied settled California law on the measure of damages to the specific facts of this case.  Because that law is sufficient to resolve this appeal, we need not, and do not, consider the cases from other states cited by Mowery.  We reject her contentions that in affirming the trial court's in limine rulings we somehow harm Californians or improperly attempt to regulate a matter within the Legislature's domain.  In deciding this appeal, we have neither imposed any new limitation on the damages recoverable by an owner of a pet that died as a result of veterinary malpractice nor expanded the protections afforded veterinarians against malpractice claims.

III.

## DISPOSITION

The judgment is affirmed.  Respondent shall recover costs on appeal.

IRION, Acting P. J.

WE CONCUR:

KELETY, J.

CASTILLO, J.