STATE v. SAMUEL BLACK.

*Indictment—Keeping Gaming-house—Appeal.*

1. The statute allows the defendant to appeal from any final judgment that may be rendered against him. This right is not forfeited by failing to appear at the trial term after verdict was rendered against him.

2. A *gaming-house* is a house or room, kept by the owner or occupier for the purpose of inducing, or permitting persons to resort thither, and play therein at games of cards or other games for money or thing of value.

3. It is not necessary to charge in express terms or to prove that the games played were games of chance.

4. Nor is it any defence that it is the defendant's dwelling-house or sleeping chamber, if the facts are proved which constitute a *gaming-house.*

INDICTMENT for keeping a gaming-house, tried before *Meares, Judge,* at June Term, 1885, of the Criminal Court of MECKLEN-BURG county.

The proof was, that the defendant leased, occupied and controlled two adjoining rooms in the second story of a building, situated in the city of Charlotte, for some months. That one of the rooms contained two beds, and the other, bed-room furniture. While these rooms were occupied and controlled by defendant, many persons, numbering from five or six up to as many as forty, frequently assembled therein, both by night and by day, for the purpose of betting money on games of cards played therein. The defendant was usually, but not always, present when these games were played, and, when present, controlled the games and the rooms. Money was staked and bet on several kinds of games of cards on frequent occasions by the persons so assembled, but the game most frequently played was called *poker.* The defendant, when present, acted as banker in these games of poker, selling chips at a certain price, which the purchasers would bet at the games of poker, and after the game was finished, the holders of these chips would have them cashed (in money) by defendant.

The counsel for defendant asked the Court to instruct the jury as follows:

1. That there is no evidence that the games played were games of chance, and that therefore the jury cannot convict under this bill of indictment.

2. That if the jury were satisfied that the rooms were rented and used for a sleeping apartment and dwelling, then, notwithstanding money was allowed to be bet at cards therein frequently, the defendant would not be guilty.

The Court refused the instructions prayed, and counsel for defendant excepted.

The Court charged the jury, that a gaming house was a public nuisance at common law, and that a gaming house was a house in which persons are induced or allowed by the owner, or occupant thereof, to assemble frequently in large or small numbers, and to bet money on the result of games played therein. That it was a question of fact to be decided by the jury, whether the defendant kept such a house. That if the jury were satisfied, beyond a reasonable doubt, that the defendant hired and controlled the rooms mentioned, and did induce or allow persons to assemble in numbers from five or six to forty, and to bet money on games of cards in these rooms, or to buy chips from him, and to bet these chips frequently on games of cards, and to cash the chips with money after the games were finished, in the manner described by the witnesses, that these facts would constitute a gaming house, although one of the rooms was also used for the purpose of a bed-room, and the defendant would be guilty.

The jury returned a verdict of guilty. The defendant was afterwards called, in order that the Solicitor might pray judgment of the Court against him, but did not appear, and the case was continued until the August Term of the Court, and no motion was made in it. At the August Term, 1885, of the Court, the defendant appeared, and his counsel moved for a new trial, on the ground that the Court had refused to give the instructions asked for by defendant. Motion refused, and defendant's counsel excepted.

The Court pronounced judgment on the verdict, from which the defendant appealed.

*Attorney-General,* for the State.
No counsel for the defendant.

MERRIMON, J. The objection, taken in this Court for the State, that the appealed did not lie, is groundless. The statute,

giving the right to appeal, is broad and comprehensive, and gave the defendant the right to appeal from any final judgment, given against him, whenever the same was entered in the course of the prosecution. He did not forfeit his right of appeal by failing to appear at the trial Term, after the verdict of guilty. There is no statute, nor is there any principle of law, under which such supposed forfeiture could be incurred. Indeed, the right of appeal did not arise until the judgment was entered. The law permits the errors assigned by the defendant, if well founded, to be corrected by this Court, notwithstanding his default.

The defendant is indicted for the common law offence of *keeping a common gaming house.* A house so kept, is a public nuisance. The natural tendency of it is to corrupt and debauch those who frequent it. It gives rise to cheating, and other corrupt practices ; it incites to idleness, encourages dishonest ways of gaining property, and brings together, for unlawful and vicious purposes, numbers, greater or smaller, of idle and evil disposed persons, who corrupt others, especially younger persons, who might otherwise be honest, industrious, and useful people. The essential effect of a house kept for such a purpose, is detrimental to sound morality, and contravenes the well being of society.

Such a house is one kept for the purpose of permitting persons to resort to it, and gamble therein, for money or other valuable thing. Hence, if a person shall keep a house, a room, or other like place, for the purpose of inducing or allowing other persons to frequent the same, in small or large numbers, to bet on the result of games played and engaged in, at cards or other like devices, for money or other thing of value, such person will be guilty of keeping a gaming house. It is the keeping—using—the house, or like place, for gaming purposes, that determines its character. The manner of fitting it up, does not constitute a house such a house; but this might be evidence of the purpose and use to which it is devoted. The fact that the keeper has his bed, or takes his meals in the room where the gaming is done, does not necessarily change the character of the house. One

might turn his dwelling house, his sleeping chamber, his office building, or business house, into a gaming house, by inducing or allowing persons to resort thither, from time to time, for gaming purposes. It is not gambling, *per se*, that constitutes the offence; it is the keeping of the house, or other like place, for the purpose of gaming, and inciting or allowing persons, few or many, to resort there, from time to time, for that purpose; this makes it such a house, and constitutes it a public nuisance.

It is not necessary to charge in terms in the indictment, that the games played were games of chance. This is sufficiently implied, in charging that the defendant kept "a certain common gaming house," &c., "and then and there, unlawfully and injuriously, did cause and procure, divers idle and ill-disposed persons, to frequent and come together, to game, and play at cards for divers large and excessive sums of money, &c., &c. Nor is it essential that the games should be played by using ordinary gaming cards. This may be done by other means and devices as well.

The instructions given by the Court to the jury, were fully warranted by the evidence. Manifestly, there was evidence going to show that games of chance were played in the house as charged.

As to the second instruction prayed for, there was no positive evidence that the chambers were used as sleeping apartments, or a dwelling place. The facts, tending to show this by implication, were the presence of beds and chamber furniture. But this did not, as we have seen, change the character of the rooms, if they were kept for gaming purposes. The Court plainly told the jury, that in order to find the defendant guilty, they must find that the chambers were kept for such purposes. 1 Russ. on Crimes 326; 1 Bish. Cr. L., §§1070, 1072; Whar. Cr. Prec, 736, *et seq.*

There is no error. To the end that the judgment may be affirmed, let this opinion be certified to the Criminal Court, according to law. It is so ordered.

No error. Affirmed.