EMMA L. IVES, APPELLANT, V. JAMES A. BOYCE, APPELLEE.

FILED NOVEMBER 9, 1909.    No. 15,791.

1. **Gaming**: GAMBLING TRANSACTIONS. A contract to operate in stocks to be adjusted according to the difference in the market value thereof is a contract for a gambling transaction.

2. ———: GAMBLING DEVICES. Transactions in a "bucket-shop," consisting of fictitious contracts of sale or purchase for future delivery of stocks with the intention that there should be no delivery, but a settlement by paying the difference of prices, are not "a game of hazard," and a telegraph wire, blackboard and ticker used by the broker in obtaining and publishing the rise and fall of prices in the New York market are not a "gambling device" under section 214 of the criminal code.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Affirmed.*

*Weaver & Giller,* for appellant.

*M. O. Cunningham, contra.*

LETTON, J.

This is an action to recover the sum of $1,500 on account of losses sustained by the plaintiff in a "bucket-shop" operated by the defendant. The plaintiff pleads that the defendant operated certain gambling rooms, wherein, by reason of certain gambling devices, wagers and bets were made on the future prices of stocks; that as a part of the gambling device defendant had wire connections with New York, and that a blackboard upon one side of the gambling room, upon which the defendant marked and wrote the quotations for the benefit of his customers, and a "ticker" were also used as other parts of the gambling device; sets forth the ordinary method of stock dealing on "margins"; that the transaction between the plaintiff and defendant "was a bet or wager by means of the aforesaid devices; that it was well under-

stood by the plaintiff that no actual sale of stocks was in contemplation by either of the parties, and that none was in fact made; that the losses or amounts were to be adjusted on either side as determined by the future changes of the price of stocks on the New York City market, and that plaintiff's losses were so adjusted." A general demurrer was filed to this petition, which was sustained by the district court, and the action dismissed.

Plaintiff maintains, first, that she is entitled to recover in this case under the common law, for the reason that, having deposited her money with the defendant to make purchases of stock with the understanding that the difference between the contract and market price be settled in money without delivery of the stocks, in that event, she could revoke the authority to enter into the illegal contract and recover back the money. She bases this contention upon the decision in *Munns v. Donovan Commission Co.,* 117 Ia. 516. In that case, however, the facts were that the plaintiff claimed that the money was deposited for the purpose of making purchases upon the board of trade, while the defendant's contention was that no purchases were to be made, but that the transaction was merely a bet upon the rise and fall of commodities. Upon this state of facts the court held that the minds of the parties never met, and that, "upon the discovery of the mistake before defendant had done more than enter the transaction on its books, the plaintiff might refuse to proceed farther and insist upon the return of his money." In that case, also, the petition was for money had and received, and the defense set up the illegal contract. The distinction between the instant case and that case, and similar cases cited in the opinion of the Iowa court, is obvious. The petition in this case set forth at length the illegal character of the transaction. It is elementary that no recovery can be had under the common law upon such transactions. The courts will leave the parties where it finds them. *Rudolf v. Winters,* 7 Neb. 125; *Sprague v. Warren,* 26 Neb. 326; *Rogers & Bro. v. Marriott,* 59 Neb.

759; note to *Crawford v. Spencer*, 1 Am. St. Rep. 745, 758 (92 Mo. 498).

Plaintiff next contends that, even if not entitled to recover at common law, she has a good cause of action under section 214 of the criminal code, citing in this connection *Perry v. Gross*, 25 Neb. 826, in which it was held that under this section the plaintiff might recover the amount lost in betting upon the result of a horse race. At the time of that transaction, however, the statute was more general in its terms than now. It then provided: "If any person shall lose any money * * * on any bet or wager, such person may recover the money * * * from the person or persons with whom said bet or wager was made (criminal code 1885, sec. 214)." If the statute had remained as it then was, we think there could be no doubt of the plaintiff's right to recover, since we have uniformly held such a transaction was of the nature of a wager; but in 1887 (laws 1887, ch. 108) this section was amended to read as follows: "Section 214. Every person who shall play at any game whatever for any sum of money or other property of value, or shall bet any money or property upon any gaming table, bank, or device, prohibited by law, or at or upon any other gambling device, or who shall bet upon any game played at or by means of any such gaming table, or gambling device, shall, upon conviction, be fined in any sum not less than one hundred dollars, and not exceeding three hundred dollars, or be imprisoned in the penitentiary not more than one year, and upon a second or any subsequent conviction shall be fined in any sum not less than three hundred dollars and not exceeding five hundred dollars, or be imprisoned in the penitentiary not more than two years: *Provided*, that if any person or persons who shall lose any property or money in a gambling house or other place, either at cards or by means of any other gambling device or game of hazard of any kind, such person, the wife or guardian of such, his heirs, legal representatives, or creditors, shall have the right to recover the money or the amount thereof, or the

property or the value thereof, in a civil action, and may sue each or all persons participating in the game, and may join the keeper of the gambling house or other place in the same action, who shall be jointly and severally liable for any money or property lost in any game or through any gambling device of any kind, and no title shall pass to said property or money, and in an action to recover the same no evidence shall be required as to the specific kind or denomination of money, but only as to the amount so lost."

Plaintiff seeks to bring the action within the scope of the above proviso by alleging that the telegraph wire, the blackboard and the ticker constituted a "gambling device," but we think this would be a forced and strained construction of the statute. The appliances mentioned may be and are used for legitimate purposes, and are no more "gambling devices" than many other instrumentalities of trade and commerce. A Missouri statute made all notes, "where the consideration is money or property won at any game or gambling device," void. In an action involving the validity of a note given for "margins," the supreme court of that state held that the note did not come under the provisions of the statute. *Crawford v. Spencer*, 92 Mo. 498, 1 Am. St. Rep. 745. To the same effect are *Dows, Jr., & Co. v. Glaspel*, 4 N. Dak. 251; *Boyce v. O'Dell Commission Co.*, 109 Fed. 758; *Sondheim v. Gilbert*, 117 Ind. 71.

But we are not without a previous construction of this amended section by this court. In *Bowen v. Lynn*, 73 Neb. 215, it was held that the legislature intended to confine the operation of the above proviso to such forms of gambling as were previously made mention of in this section, and it is said: "But at all events the proviso affords a civil remedy to such persons only as shall 'lose any property or money in a gambling house or other place, either at cards or by means of any other gambling device or game of hazard.' Now it seems to us that this statute is aimed especially and almost exclusively at two things

which are absent, or substantially so, from the record in the case at bar, namely, a gambling house or place and a game at cards or other device or some game of hazard. In other words, what the legislature had prominently and principally in mind, in drafting this section, was the unlawful game or amusement and the place where it should be carried on."

We are clearly convinced that the petition does not describe a "game of hazard," and, in fact, the plaintiff does not seriously contend that the transaction described constituted "a game" of any kind. The right to recover in cases of this nature depends so closely upon the exact language of each particular statute that cases from other states are of little avail as authority unless the language of the statute is identical with that of this state. For this reason, the cases cited by plaintiff seem inapplicable.

We are of opinion that the transaction described in the petition does not come within the provision of the statute, and that the district court properly sustained the demurrer. Its judgment therefore is

AFFIRMED.