## E. P. JAMES *et al.* v. STATE.

No. A-189.    Opinion Filed January 5, 1911.

1.    GAMING—Conduct of Turf Exchanges—Issues and Proof. Under an information charging a defendant with conducting a banking and percentage game, played with certain devices, for money and other representatives of value, a conviction cannot be had upon proof that the accused conducted a "Turf Exchange" where his patrons congregated and bet upon horse-races run at another place.

2.    GAMING—"Banking or Percentage Games"—Construction of Statute. To be guilty of violating section 2422 of Snyder's Comp. L. Okla., the accused must deal, play, carry on, open or conduct the game upon which money or other representative of value is wagered, and the game which he so deals, plays, carries on, opens or conducts must be one of those specially mentioned in said section, or some banking or percentage game played with dice, cards or some other device.

3.    SAME—"Device"—Definition. By the word "device" as used in section 2422 of Snyder's Comp. L. Okla., is meant the means, instrument, contrivance or thing by which a banking or percentage game is played.

4.    NUISANCE—Gaming—Turf Exchanges. A house or place kept for the purpose of enabling persons to place bets or wagers upon horse races is a common gambling house, is a nuisance **per se** and those who conduct it are indictable and punishable under section 2465 of Snyder's Comp. L. Okla.

(Syllabus by the Court.)

*Appeal from Canadian County Court; H. L. Fogg, Judge.*

E. P. James, Ollie James and C. E. Hillswick were convicted of violating section 2422 of Snyder's Comp. L. Okla. 1909, and they appeal. Reversed and remanded.

*Gillette, Libby & Gillette, Davidson & Malloy, Kistler & Haskell* and *Flynn, Ames & Chambers,* for plaintiffs in error.—Citing *State v. Ayers* (Or.) 88 Pac. 653.

*Charles West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.—Citing *Miller v. U. S.,* 6 App. Cas. (D. C.) 10.

RICHARDSON, JUDGE. The charging part of the information in this case was as follows:

"The said defendants, E. P. James, Ollie James, C. E. Hillswick and Gale Pendleton, did, then and there unlawfully conduct, as owners and for hire, a certain banking and percentage game, played with and by means of a certain device, towit, a blackboard and telegraph connections, together with tickets with the name of the supposed horses and the amounts wagered on them, for money, checks and other representatives of value."

To this information plaintiffs in error interposed a demurrer on the ground that the act charged did not constitute an offense. This was overruled. After trial and verdict, plaintiffs in error filed a motion for a new trial, in which they alleged that the court erred in overruling the demurrer, and that the verdict of the jury was contrary to the law and the evidence, which motion was overruled. These are the only assignments we deem it necessary to consider. The statute under which this information was drawn, being section 2422 of Snyder's Comp. L. Okla. 1909, reads as follows:

"That every person who deals, plays or carries on, or opens or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, poker, roulette, craps, or any banking or percentage game played with dice, cards, or any device, for money, checks, credit, or any representative of value, is guilty of a misdemeanor, and is punishable by a fine of not less than one hundred dollars nor more than one thousand

dollars, and by imprisonment in the county jail for a term not less than thirty days nor more than six months."

This statute makes it an offense for any person to conduct, either as owner or employee, whether for hire or not, any banking or percentage game played with any device, for money, checks, credit, or any representative of value. This information alleged that plaintiffs in error did conduct, as owner and for hire, a certain banking and percentage game played with and by means of certain named devices, for money, checks and other representatives of value. The information is substantially in the words of the statute, and, though inartificially drawn, is probably sufficient. The devices named are unusual ones for that purpose, but the court could not say as a matter of law that they could not be so used.

We think, however, that the allegations of this information were not supported by the evidence. The evidence tended to show that plaintiffs in error were engaged in operating what is known as a "Turf Exchange" in the city of El Reno. It was shown that they had rented a building for that purpose, and kept therein a blackboard, a telegraph instrument and a telegraph operator; that this was conducted for the purpose of enabling patrons of the exchange to lay bets and wagers upon horse races run in other states; that on the day previous to the running of such races the names of the horses entered therein were sent to the exchange by leased wires, and were posted on the blackboard, as were also the odds on the horses as made by bookmakers at the tracks. When the odds were posted the patrons of the exchange selected the horse or horses which they wished to back, and placed their bets thereon. They were given tickets showing the amount of money wagered, the name of the horse upon which they had bet, and the terms of the wager. After the race was run the result was telegraphed to the exchange, and the wagers were settled accordingly. Generally all bets were taken by the exchange.

The authorities are to the effect that running a horse race is a game, but in this case the games were not played at the "Turf

Exchange," and were not conducted by plaintiffs in error. They did not conduct the races and therefore did not conduct the game. Neither was the game played by means of the devices alleged in the information; that is, the races upon which the money, checks, credits or representatives of value were wagered and were won or lost, were not run in any sense by means of telegraph wires, telegraph instruments, blackboards or tickets. The game, the horse race, was run and played by means of horses. All that was done in the "Turf Exchange" was to make bets upon the result of the races. The tickets given the gamblers were only memoranda of their bets, and the telegraph wire and instrument and the blackboard were merely means of showing what horses were to run, the odds placed, and of making known the result of the race. They furnished advance information in regard to the game, and made known the result as determined upon the track.

Section 2019 of Snyder's Comp. L. Okla. 1909 provides that no act or omission shall be deemed criminal or punishable except as prescribed or authorized by the code. In *U. S. v. Wiltberger,* 5 Wheat. 76, 5 L. Ed. 37, it is said by Chief Justice Marshall:

"To determine that a case is within the intention of the statute, its language must authorize us to say so. It would be dangerous indeed, to carry the principle that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated."

We think the above quotation applicable to this case, and are of the opinion that the facts proven herein are within neither the letter nor the spirit of the statute under which the information was drawn. Statutes identical with or similar to the one under consideration have been enacted in many of the states, and have often been construed by the courts; and, so far as we have been able to ascertain, it has been uniformly held that the conducting of a turf exchange or the selling of pools upon races in the manner shown here was not a violation of such statute. Thus it is said in *State v. Hayden,* 31 Mo. 25:

"It is a great perversion of language to call a horse race a gambling device. If the Legislature desires to prohibit horse races it is easy for them to say so in plain terms. No one would even suppose that penalties inflicted upon keepers of faro banks and tables and such like gaming devices, were intended to apply to horse races, or foot races, or boat races. A criminal code cannot be so loosely interpreted."

The same question was before the Supreme Court of New York in the case of *People v. Engeman,* 114 N. Y. Supp. 174, the syllabus of which case is as follows:

"A 'device or apparatus for gambling' is a device or apparatus designed for carrying on actual gambling, or determining whether the player is to win or lose, like a wheel of fortune and contrivances of that sort. A paper commonly called 'advance information,' conveying information as to horses entered to take part in a race to be run, the names of the jockeys, the names of the horses withdrawn, the length of the race and its number, though useful to a gambler in placing his wager, is not a 'device or apparatus for gambling' denounced by Penal Code, par. 344."

And in the body of the opinion it is said:

"This is the test: Whether the implement or device is used in determining who shall win or lose; whether it is an integral part of the actual gambling. A gambling device is defined (20 Cyc. 871) as an invention often used to determine the question of who wins and who loses, that risk their money on a contest or chance of any kind; anything which is used as a means of playing for money or other thing of value, so that the result depends more largely on chance than skill."

And this decision was affirmed by the Court of Appeals of New York in 195 N. Y. 591, 89 N. E. 1107. In construing a similar statute the Supreme Court of Minnesota, in the case of *State v. Shaw,* 39 N. W. 305, said:

"The statute enumerates cards, dice and gaming tables, which are well defined devices used in gambling, and then follow the word 'or any other gambling devices whatever.' Gambling is defined to be 'a risking of money or other property between two or more persons on a contest of chance of any kind, where one must be the loser and the other the gainer.' A horse race may therefore be a game, and betting on a horse race gambling, and

undoubtedly the parties charged in the indictment were gambling, and it might well be held that persons betting on such games would be liable to prosecution under section 296 of the Penal Code, and that the house or place kept by defendants was a common nuisance, and the keepers might have been indicted under the common law 'for keeping a common gaming house.' But the offense here charged is gambling with 'gambling devices,' and 'keeping gambling devices designed to be used in gambling.' The term 'device' has the same meaning in both sections. Though the words 'any other gambling device whatever,' are doubtless intended to include any kind of apparatus, contrivance, or any instrument which may be used in games of chance, and upon the manipulation or operation of which the result of the game is determined, yet these terms, 'gambling devices,' must be construed *ejusdem generis* with the particular devices which are described in the preceding porttion of the same section in fixing the general character of such device referred to in the statute. *In Re Leo Tong,* 18 Fed. 257. A horse race is not a gambling device, nor are descriptive lists of such races, or statements or announcements of the particulars thereof, from which those desiring to bet on the races may more conveniently obtain information in respect to the same, and we are unable to see that the boards and lists or records of pool sold described in the indictment are anything more. There is no element of chance in their use, which we think is the test. The defendants' methods undoubtedly serve to facilitate gambling, and so does the fact that they keep open a place for gambling, and the same may be said also of the published schedule of races and games, and many other acts and things, which, however, cannot be denominated 'gambling devices' within the meaning of the statute. The betting is on the races exclusively and the result is in no way determined by the use of the instrumentalities in question, and no additional element of chance is introduced thereby."

A similar statute was passed upon in the case of *Ives v. Boyce,* 85 Neb. 324, 123 N. W. 318, and it was there held that the telegraph wires and instruments, blackboard and tickets alleged in this information to be gambling devices, were not such within the meaning of the statute. In that opinion the court said:

"Plaintiff seeks to bring the action within the scope of the above proviso by alleging that the telegraph wire, the blackboard

and the ticket constituted a 'gambling device'; but we think this would be a forced and strained construction of the same. The appliances mentioned may be and are used for legitimate purposes, and are no more 'gambling devices' than many other instrumentalities of trade and commerce."

And the Supreme Court of the Territory of Oklahoma, in *Proctor v. Territory,* 18 Okla. 37, in construing this statute, said:

"When the charge is for playing at some one of these unnamed games it will be necessary to set out the description of the game or device sufficiently to show that it was played with dice or cards, *or some other device upon which something was hazarded,* for money or something of value."

See, also, *James et al. v. State,* 63 Md. 242; *Crow v. State,* 6 Tex. 334; *McEllroy v. Carmichael,* 6 Tex. 454, and *State v. Bryant* (Mo.) 2 S. W. 836. We deem it useless to multiply authorities upon this question; we believe that none can be found holding that the acts proved constituted a violation of this statute, and we do not think that any such conclusion can be drawn from even a casual reading of the section in question.

We concur with many good people in believing that the operation of these so-called "Turf Exchanges" are pernicious and should be specifically prohibited, but the making of laws to that end is a legislative and not a judicial function; and the Legislature has clearly negatived its intention to bring them within the terms of this particular statute by the language it employed in framing the statute.

There is no doubt but that the making of bets and wagers in these exchanges constitutes gambling, and the exchanges themselves are common gambling houses, and are therefore nuisances *per se. Rex v. Rogier,* 1 B. & C. 272, 8 E. C. L. 117, 2 Dowl. & R. 431; *U. S. v. Dixon,* 4 Cranch (C. C.) 107; *Vanderworker v. State,* 13 Ark. 700; *State v. Layman,* 5 Harr. (Del.) 510; *State v. Black,* 94 N. C. 809; *People v. Weithoff,* 51 Mich. 203, 47 Am. Rep. 557; *Anderson v. State* (Tex.) 12 S. W. 686. See, also, 14 Am. & Eng. Enc. L., page 694, and cases there cited. They are such under our statutes. Under section 5771 of Snyder's Comp.

4 Cr.—38

L. Okla., their operation may be enjoined; they may be abated as provided in chapter 71 of said laws; and under section 2465 of said laws their operation constitutes a misdemeanor, and those who conduct them may be prosecuted criminally and have inflicted upon them the punishment prescribed by section 2032; but a prosecution will not lie on an information based upon section 2422. Reversed and remanded.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.