## Ad-Lee Company, Appellant, *v.* Meyer.

Argued October 5, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*John H. Lauer,* with him *Raymond B. Gabler* and *Paul G. Schaefer,* for appellant.—The rule, according to the great preponderance of authority, is that a contract,

legal in itself, is not rendered unenforceable by the mere fact that one of the parties thereto has knowledge of an intended purpose of the other party thereto, by means of the contract or subject-matter thereof, to violate some law or public policy of the state: Waugh v. Beck, 114 Pa. 422; Carmichael v. Gardner, 26 Pa. Dist. R. 353.

Whether the vendor comes into court with "clean hands" in an injunction suit, depends on the legality of the sale by the complainant to his customers. If the sale to the customer is legal, the transaction is entitled to the full protection of the court: Lewis's App., 67 Pa. 153; Hays's Est., 159 Pa. 381; Comstock v. Thompson, 286 Pa. 457.

The finding of unfair trade competition by the defendant has the force and effect of a verdict of a jury and will not be disturbed: Shimer v. Trust Co., 264 Pa. 444; Browne v. Hoekstra, 279 Pa. 418; Perry v. Sims, 279 Pa. 165.

*A. M. Simon*, for appellee.—Plaintiff's ball gum vending machine, gum balls with the numbers inside and the chart and plaintiff's advertisements and dealing show a gambling device and lottery and plaintiff is party to the design to set up gambling devices and lotteries in Pennsylvania: Com. v. Sheriff, 10 Phila. 203; Atkinson v. Sapovits, 87 Pa. Superior Ct. 376; Brenner v. Pecarsky, 86 Pa. Superior Ct. 414; Miles v. Zorzi, 88 Pa. Superior Ct. 231; Nester v. Brewing Co., 161 Pa. 473; Moyer v. Kennedy, 76 Pa. Superior Ct. 523; Snaman v. McGinn, 77 Pa. Superior Ct. 287; Walcofski v. Coal Co., 278 Pa. 84; Employers Mut. I. & S. Co. v. Pakradooni, 84 Pa. Superior Ct. 532.

The decree of the court below should be sustained because there is nothing in the evidence nor in any rule of law to sustain the finding of unfair trade competition: B. V. D. Co. v. Kaufmann & Baer Co., 272 Pa. 240 Scranton Stove Works v. Clark, 255 Pa. 23; Hoyt v. Hoyt, 143 Pa. 623; Lafean v. Weeks & Co., 177 Pa. 412.

OPINION BY MR. JUSTICE SIMPSON, November 26, 1928:

The plaintiff corporation appeals from a decree dismissing its bill in equity to enjoin defendant from unfair trade competition in the future, and to require him to account for previous profits thus realized. The court below correctly found, as a fact, that by far the largest, and the only profitable part, of plaintiff's business, which it sought to have protected from defendant's competition, was carried on in furtherance of an illegal gambling scheme; and hence decided, as a matter of law, that equity would not lend its aid to enable plaintiff to obtain a partial monopoly therein, even though defendant was engaged in a like illegal business in such a wrongful way as to affect plaintiff's profits. The relevant facts are practically undisputed, the law is clear, and the decree is right. Our reading of this record impels us to say that we regret there is no statute authorizing the courts to enjoin both parties.

Plaintiff purchases slot machines, and sells or gives them to its customers. It also purchases sugar coated balls of chewing gum, drills a hole in them, inserts therein a paper slip containing a number, and sells them in cartons holding 1,200, the slip in each ball having a number different from that in any of the others, and all of them being placed at one time in a glass globe which forms the upper part of the machine. One who wishes to gamble by its use inserts a nickel in the slot, (which the proprietor afterwards gets), turns the crank which operates the machine, and receives from it one of the balls. He then extracts the numbered paper from the hole in the ball, compares it with the numbers on a chart provided by plaintiff, and receives a sum of money or merchandise worth a number of times the amount paid by him, if, perchance, the paper extracted from the ball has on it one of the so-called "lucky numbers" shown on the chart. If not, he gets nothing but the ball, which is worth a fraction of a cent. That this is gambling and immoral is free from doubt. "Anything which induces

men to risk their money or property without any other hope of return than to get for nothing any given amount from another, is gambling, and demoralizing to the community, no matter by what name it may be called": Brua's App., 55 Pa. 294, 298. This is true also though the operator of the machine always gets something of trivial value as compared with the sum risked.

In order to induce its customers to purchase its paraphernalia, plaintiff extensively advertises that the one who buys them will find crowds of people, both young and old, flocking to his store to operate the machine, and that he will make considerable money as the result thereof. It is of no moment that plaintiff itself does not directly induce others thus to gamble, nor take money from the dupes who do; it seeks a decree from a court of equity to enable it to have a monoply in selling to others that with which the buyers can, and are intended to, induce gambling, and by which gambling is in fact done. Nor is it a matter of any consequence that the machine and the perforated balls can be used for innocent purposes, for the scheme evolved by plaintiff is a gambling one; for this use it advertises its illegal equipment; and, because of this, it seeks to preserve from defendant's unfair competition the illegal business thus built up. Nor is it of any importance that a decree enjoining defendant would result in there being one less wrongdoer. This fact furnishes no reason why a court of equity should aid plaintiff to continue his wrongdoing more profitably.

Neither the above, nor any other excuse or argument, will avail where, as here, there was an intention to induce gambling, and in fact it resulted therefrom. "That which the law prohibits, either in terms or by affixing a penalty to it, is unlawful, and it will not promote in one form that which it declares wrong in another......This principle is not limited in its application [to acts violative of statutes]. It applies in many cases where the acts are illegal solely on the ground of public policy.

...... Where a man lends money to another for the express purpose of enabling him to commit a specific unlawful act, and such act be afterwards committed by means of the aid so received, the lender is a particeps criminis" and cannot successfully maintain an action against the borrower: Waugh v. Beck, 114 Pa. 422, 428, 429; Freedley v. Jacoby, 220 Pa. 609. A fortiori, he cannot succeed when he asks a court of equity to aid him in making a profit by doing that which he has no right to do at all.

As far back as 1775, LORD MANSFIELD said in Holman v. Johnson, 1 Cowper 341, 343: "The objection that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this; ex dolo malo non oritur actio. No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appears to arise ex turpi causa, or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff." This has always been the law of Pennsylvania, and instances of its application may be found in Nester v. Continental Brewing Co., 161 Pa. 473; Vandegrift v. Vandegrift, 226 Pa. 254; Walcofski v. Lehigh Valley Coal Co., 278 Pa. 84, and Rosenthal v. Ostrow, 287 Pa. 87. It is an unbending rule with us that neither law nor equity will aid one in relation to that which is wholly or partially immoral or illegal.

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellant.