American Telephone and Telegraph Company's
Appeal.

Argued March 10, 1937.

Before KELLER, P. J.,
CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and
JAMES, JJ.

*E. V. Bulleit,* for appellant.

*John P. Butt,* for appellee.

OPINION BY KELLER, P. J., April 16, 1937:

Complaint was made before a justice of the peace by a corporal of the State Police that David Weller was illegally engaged in pool-selling or book-making and in wagering or betting upon horse races at a designated place in the Borough of Gettysburg, contrary to the Act of May 22, 1895, P. L. 99; and a search warrant was issued to search for and seize a teletype machine, racing forms, racing charts, books of record and betting sheets used by him for the purpose of gambling and the placing of wagers on the results of horse races. Under this search warrant, a teletype machine owned by American Telephone and Telegraph Company and leased by it to Interstate News Company was seized and taken into possession. Weller pleaded nolo contendere to an indictment charging him with violation of the act above referred to, and thereafter a petition was filed for the condemnation, forfeiture and destruction of the teletype machine, found in his possession, as an illegal gambling device. An answer was filed by the owner of the teletype machine and after a hearing, at which testimony was taken before the court, an order was made directing its forfeiture and destruction. The owner appealed to this court.

The sections of the criminal code (Act of March 31, 1860, P. L. 382) which authorize the seizure and sub-

sequent forfeiture and destruction of gambling devices are sections 59 and 60 (pp. 398, 399). Section 59, by its express terms, is based on a complaint involving the commission of one of the crimes provided against in sections 56, 57 and 58 of the said code—(sections 55, 56 and 57 may have been intended)—relating to gambling. Being a penal statute it must be construed strictly, that is, its effect cannot be extended beyond its plain, ordinary and usual meaning, applied, however, with common sense: *United States v. Alford,* 274 U. S. 264, 267.

Section 56 provides that "If any person shall keep or exhibit any gaming table, establishment, device or apparatus, to win or gain money or other property of value or [shall] aid, assist or permit others to do the same; or if any person shall engage in gambling for a livelihood ...... he shall be deemed and taken to be a common gambler and upon conviction thereof" shall be sentenced, etc. It is clear that the 'gaming table, device or apparatus' referred to in this section, relates to some article, device, machine or apparatus actually used or employed to gamble with or upon, thus embracing in general terms the more particular objects or articles referred to in the 55th section, where they are enumerated as follows: "Any game or device of address or hazard, with cards, dice, billiard balls, shuffle boards, or any other instrument, article or thing whatsoever, heretofore or which hereafter may be invented, used or employed, *at which money or other valuable thing may or shall be played for, or staked or betted upon*" (Italics supplied).

Section 59 uses the exact language of section 56 when it authorizes the search for, seizure, forfeiture and destruction of "any gaming table, device or apparatus" the discovery of which might lead to establish the truth of the charge of gambling; and it applies to the same

articles, devices, etc., and only the same, covered by the 56th section, in connection with section 55.

Section 60 which authorizes the "sheriff, constable or other officer of justice, with or without warrant, to seize upon, secure and remove *any device or machine of any kind, character or description whatever, used and employed for the purpose of unlawful gaming"*, must be given a similar construction.

A teletype machine is a telegraph machine, which typewrites the telegram as the message is received instead of requiring an operator to receive it in the Morse code and transcribe it. It is in general use in telegraph offices, and the results of its operation may be seen in the typewritten slips pasted on a telegraph blank when delivered. It is, in no sense, an article, device or apparatus to win or gain money, or at which money or other valuable thing may be played for or staked or betted upon. It is a machine or apparatus for transmitting or conveying information, not a gambling device or apparatus. The fact that gamblers may use the information thus received in their unlawful business, for the purpose of making bets or wagers or to pay off or collect on such bets or wagers, does not transform the teletype into a gambling machine, device or apparatus, such as roulette wheels, rouge et noir tables, faro layouts, wheels of fortune, cards, dice, punch boards, slot machines, lottery tickets, 'numbers' slips or policy sheets, etc. If the legislature sees fit to enact that a machine or instrument knowingly used to furnish or obtain information to be used in gambling, may be seized, forfeited and condemned along with actual gambling devices so used, etc. it may, perhaps, do so, under the police power, but such authority cannot be inferred from an act merely authorizing the seizure and destruction of gambling devices and apparatus. Information of this kind may be furnished, sent or received by telegraph, telephone, radio, print-

ing press and newspaper, United States mail, express, private messenger, automobile, and other means. While the information so obtained may be used or employed in connection with gambling operations, the means or instrument by which the information is given or received is not within sections 59 or 60 of our Criminal Code. They are limited and restricted to such devices, apparatus, etc. as are used and employed for gambling, in the sense that in using them money, etc. is staked, wagered, won or lost as a direct result of their employment or operation.

The construction here given is in accord with the prior rulings of this court and of the Supreme Court: *Rosen v. Supt. of Police,* 120 Pa. Superior Ct. 59, 61, 181 A. 797; In re *Petition of Supt. of Police,* 113 Pa. Superior Ct. 520, 173 A. 753, affirmed, 316 Pa. 449, 175 A. 548, on Judge CUNNINGHAM'S opinion; *Com. v. Kaiser,* 80 Pa. Superior Ct. 26, 28; *Com. v. Sinn,* 82 Pa. Superior Ct. 482, 483; *Ad-Lee Co. v. Meyer,* 294 Pa. 498, 500, 501, 144 A. 540 (slot machine); and it is in consonance with the great weight of authority in other jurisdictions. The term 'gambling device' is considered in many cases collated in 27 Corpus Juris 988, et seq. but all of them are in accord with the thought expressed in this opinion. A typical definition is found in *State v. Sanders,* 86 Ark. 353, 111 S. W. 454: "An instrumentality for the playing of a game upon which money may be lost or won". In 12 R. C. L. 726 (Gaming, sec. 26) a gaming device is "interpreted as meaning the tangible thing with which the game, on which money may be lost or won, is played, as distinguished from the game itself". Examples of gambling devices or apparatus are given in *J. B. Mullen & Co. v. Mosley,* 13 Idaho 457, 90 P. 986 (slot machine); *Frost v. People,* 193 Ill. 635, 61 N. E. 1054 (faro lay-out, roulette wheel, cards and dice); *People v. Adams,* 176 N. Y. 351, 68 N. E. 636 (policy slips or sheets); *Kite v. People,* 32

Colo. 5, 74 P. 886 (roulette wheel); *State v. Soucie's Hotel,* 95 Me. 518, 50 A. 709 (slot machine); *Woods v. Cottrell,* 55 W. Va. 476, 47 S. E. 275 (faro bank and slot machine). In *People v. Engeman,* 114 N. Y. Supp. 174, 177, 129 App. Div. 463, affirmed, 195 N. Y. 591, 89 N. E. 1107, it was said: "A device or apparatus for gambling is a device or apparatus designed for carrying on actual gambling, or determining whether the player is to win or lose, like a wheel of fortune, or contrivances of that sort." It was there ruled that a racing sheet, called 'advance information' conveying information as to horses, jockeys, etc. in races about to be run, though useful to the gambler in placing his wagers was not a device or apparatus for gambling. In *Ives v. Boyce,* 85 Neb. 324, 123 N. W. 318, it was held that a telegraph wire, ticker and blackboard used in a bucket shop by a broker in obtaining the rise and fall of prices in the New York market were not gambling devices within the meaning of a criminal statute. In *James v. State,* 112 Pac. 944, 4 Okla. Crim. 587, where a telegraph instrument, telegraph operator and blackboard were used to secure and convey racing information to a gambling establishment known as a turf-exchange, it was held that the telegraph instrument and blackboard were not implements used in gambling, because they were not instrumental in deciding or determining who won or lost, but only supplied information of a race that was run elsewhere, which determined the winners and losers.

The same result was arrived at in *State v. Shaw,* 39 Minn. 153, 39 N. W. 305, which held that betting on horse races is gambling, and that a place kept or maintained for that purpose was a gambling establishment and a nuisance, but that lists or announcements used therein giving information of the races, etc. were not gambling devices. The court said, inter alia: "A horse race is not a gambling device, nor are descriptive lists of such races, or statements or announcements of the

particulars thereof, from which those desiring to bet on the races may more conveniently obtain information in respect to the same; and we are unable to see that the boards and lists or records of the pools sold described in the indictment are anything more. There is no element of chance in their use, which we think is the test. The defendants' methods undoubtedly serve to facilitate gambling, and so does the fact that they keep open a place for gambling, and the same may be said also of the published schedules of races and games, and many other acts and things, which, however, cannot be denominated 'gambling devices' within the meaning of the statute. The betting is on the races exclusively, and the result is in no way determined by the use of the instrumentalities in question, and no additional element of chance is introduced thereby."

Appellant's position is correctly and concisely stated in the following excerpt from the argument of its learned counsel: "The one-way teletype is not betted upon. It does not receive or transmit the moneys bet. It does not record the bets. It does not determine the winners. It simply receives information, which information enables the gamblers to ascertain the results of the event on which they have wagered. The furnishing or receiving of racing or sporting information is not gambling and is not a crime. Therefore, the mechanical facility which enables such information to be furnished or received cannot be said to be a device or instrument for gambling."

However desirable it may be to stamp out the gambling evil—and we are in full accord with the purpose—we cannot extend the provisions of the Criminal Code respecting it beyond their plain and clearly intended meaning. The court can probably make the enforcement of the act more effective in cases like this one, where the instrument employed as the means of securing information used in gambling is not subject

to forfeiture, by a severer penalty on the convicted gambler.

The order of the court below is reversed.