## Ardolino v. Ardolino

Before McNaugher, P. J.; Ellenbogen and Smart, JJ.

*Julius J. Lorenzi* and *Joseph P. Passafiume*, for plaintiff.

*Charles J. Margiotti*, for defendant.

SMART, J., March 12, 1952.—The argument in this case is based on defendant Lena Ardolino's answer raising preliminary objections under Equity Rule No. 48 (12 PS Ann. §1221) to the bill of complaint filed in the above case by Louise M. Ardolino, plaintiff, as administratrix of the estate of James Ardolino.

Two separate causes of action are set forth in plaintiff's bill:

1. Plaintiff alleges that her deceased husband in 1934 paid out of his own funds for a new retail liquor license and equipment necessary to establish a retail liquor business, and "that for certain collateral reasons and for convenience sake" Lena Ardolino, his sister, was the designated licensee, and the deceased James Ardolino, manager of the business; that defend-

ant did not contribute in any manner whatsoever to the alleged cost of the liquor license or the equipment purchased as essential to the operation of such business; that between 1934 through 1950, although the retail liquor license was renewed yearly with defendant as licensee and decedent as manager, the decedent was "in fact at all times during the life of the aforementioned business and until the time of his death" on May 27, 1951, "the true owner and operator, and as such handled all business transactions incident to the operation of the business"; that defendant was a "mere trustee" for decedent and did little or nothing in connection with the operation of the business, and in fact very seldom even visited the premises; that as of June 27, 1951, after decedent's death, defendant sold and transferred as her own property to defendant Baloh, the license and business for an unknown consideration, taking as part consideration a bailment lease in the sum of $2,000; and that this defendant, Lena Ardolino, now repudiates the alleged trust placed in her with reference to the liquor license and liquor establishment, and refuses to recognize the rights of decedent's representative, plaintiff, to the proceeds realized from the sale of the business. In short, plaintiff seeks to enforce a trust in a retail liquor license business.

2. In the second cause of action plaintiff alleges that her deceased husband by deed dated April 14, 1941, purchased property located at 616 Larimer Avenue, Pittsburgh, Pa.; that the consideration for the transfer was $5,000, "the entire amount being paid by James Ardolino, although $1,000 was loaned to him by Lena" but "that for the purpose of providing Lena with security for the $1,000 loaned, Lena was designated as cograntee in the deed" with decedent, and that it was agreed and understood between decedent and defendant "that upon the repayment of the $1,000 loan

by James, Lena was to release and thereby extinguish any claim which she may have against his property." Plaintiff further alleged that from the time of the purchase in 1941 decedent or his agent collected the rents from this property, paid all taxes and all utilities and exercised full, complete and exclusive control in the management thereof. Plaintiff avers that in violation of the alleged agreement between the parties at the time of the purchase in 1941, defendant now claims title to one half of the premises.

These preliminary objections are now before the court and will be considered respectively, as submitted.

1. The Pennsylvania Liquor Control Act of November 29, 1933, Sp. Sess., P. L. 15, as amended, 47 PS §744-403, provides that the applicant must state in his application for a retail liquor license that he is ". . . the only person in any manner pecuniarily interested in the business so asked to be licensed, and that no other person will be in any manner pecuniarily interested therein during the continuance of the license . . ."

The same act later provides (47 PS §744-610) that any person who violates any of the provisions of the Act shall be guilty of a misdemeanor and imposes certain fines or penalties for such violation in addition to the board's right to suspend and revoke licenses granted under the act.

The license in the instant case was obtained in the name of defendant Lena Ardolino. In the light of the above statute, if Lena Ardolino was not the true licensee but only a trustee for James Ardolino, the true licensee, a wrong has been committed. The statute has been violated and the violator subject to punishment thereunder in the manner set forth. This would-be violator then comes into court and requests aid, i. e., that the apparent licensee, Lena Ardolino, be directed to hold the unknown consideration received

as proceeds from the sale of the retail liquor license and liquor establishment as trustee for the estate of James Ardolino.

Is equity able to give such assistance? Does such illegality bind the hands of equity in all such situations?

Plaintiff reasons that the Act of 1933, supra, does not expressly provide that contracts or agreements in violation of the Liquor Control Act shall be unenforcible, although it does make a violation a misdemeanor; that the acts which it declared illegal are not otherwise criminal.

This cannot be so because the courts will not take such direct violations so lightly. Under the above sections of the Liquor Control Act any claim by decedent that he was a bona fide owner of the liquor business or liquor license was unlawful, because any bargain is illegal if either the formation or the performance thereof is prohibited by constitution or statute. See A. L. I. Restatement of the Law of Contracts §580. Section 598 provides:

"A party to an illegal bargain can neither recover damages for breach thereof nor, by rescinding the bargain, recover the performance that he has rendered thereunder or its value . . .

"If an agreement binds the parties or either of them to do, or if the consideration is to do, something opposed to the policy of the State or Nation, it is illegal and absolutely void, however solemnly made: 13 C. J. 424. . . .": Commonwealth v. Glennon, 92 Pa. Superior Ct. 94, 100.

". . . 'The test (says Judge Duncan, in Swan v. Scott, 11 S. & R. 164) whether a demand connected with an illegal transaction is capable of being enforced at law, is whether the plaintiff requires the aid of the illegal transaction to establish his case. If the plaintiff cannot open his case without showing that he has

broken the law, the court will not assist him, whatever his claim in justice may be upon the defendant.' ": Fowler et al. v. Scully, etc., 72 Pa. 456, 468.

There can be no question then that plaintiff would of necessity be required to rely on and prove an absolute violation of the Pennsylvania Liquor Control Act.

In the case of Vandegrift v. Vandegrift, 226 Pa. 254, a bill in equity by a surviving partner was brought against the executrix of the deceased partner for an accounting, it appearing that the partnership agreement was for the manufacture and sale of distilled spirituous liquors; that the business was to be conducted in and under the name of one of the partners only, and that for years all the licenses, both State and Federal, were taken out in the name of the deceased partner only, the name of the other partner being wholly concealed on account of creditors. The Supreme Court held that the action could not be sustained because such a contract of partnership was an illegal contract, in clear violation of the Pennsylvania Act of June 9, 1891, P. L. 257, sec. 4, and the Act of Congress, Internal Revenue Laws, sec. 3259, tit. 35, ch. 4 (2 U. S. Comp. Stat. 2113). In this case the court stated at pages 258, 259:

". . . If the plaintiff is compelled to rely upon an illegal contract to make out his right to what he asks, he cannot succeed. . . ."

The Supreme Court, in affirming the decision in the case of Ad-Lee Company v. Meyer, 294 Pa. 498, stated at page 502:

"As far back as 1775, Lord Mansfield said in Holman v. Johnson, 1 Cowper 341, 343: 'The objection that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the

defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this; ex dolo malo non oritur actio. No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appears to arise ex turpi causa, or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff.' This has always been the law of Pennsylvania, and instances of its application may be found in Nester v. Continental Brewing Co., 161 Pa. 473; Vandegrift v. Vandegrift, 226 Pa. 254; Walcofski v. Lehigh Valley Coal Co., 278 Pa. 84, and Rosenthal v. Ostrow, 287 Pa. 87. *It is an unbending rule with us that neither law nor equity will aid one in relation to that which is wholly or partially immoral or illegal."* (Italics supplied.)

See also Tucker v. Binenstock, 310 Pa. 254.

This court has not failed to take into consideration the hardship and forfeiture involved in attempting to balance the equities in this particular case. We are clearly aware of the effect of this ruling upon plaintiff and her minor children. We cannot, however, disregard authority and decisions that have settled the principle enunciated above, recognizing that they too were perplexed with like equities.

Thereore, on the basis of an exacting search which revealed no contrary authority, and following the decisions set forth above, this court concludes that as a matter of law, plaintiff cannot maintain her position, because to do so would be in direct conflict with the equitable principle, "that equity will not lend itself to aid in the enforcement of an illegal agreement."

The first preliminary objection will therefore be sustained.

2. Defendant Lena Ardolino, inter alia, pleads that the second cause of action, if based upon a resulting or constructive trust, is barred by the five-year statute set forth below.

It is generally held that trusts fall into one of the following divisions.

Express trusts, which are oral or written, are usually contrasted with implied trusts, which are trusts that the courts imply from the words of an instrument where no express trust is declared, but such words are used that the courts infer or imply that it was the intention or purpose of the parties to create a trust. A constructive trust is one implied by law; a resulting trust is also so implied. There is a distinction between these latter two insofar as a constructive trust is a law-imposed trust, while a resulting trust is a law-inferred-as-a-fact trust. Express and resulting trusts are trusts by the real or the presumed intention of the parties, but constructive trusts are trusts in invitum. With these few basic distinctions in mind, we approach the problem at hand.

In considering preliminary objections the averments of fact made in the bill must be accepted as true. See Midland Borough v. Steubenville, etc., Co., et al., 300 Pa. 134, 138; West, Admx., v. Young et al., 332 Pa. 248, 251.

It is settled that under the Defeasance Act of June 8, 1881, P. L. 84, 21 PS §951, a deed absolute on its face cannot be reduced to a mortgage unless a defeasance to the deed is in writing, signed and delivered by the grantee to the grantor. See Sankey v. Hawley, 118 Pa. 30. It is also well settled that the statute of frauds, Act of April 22, 1856, P. L. 532, sec. 4, 33 PS §2, which provides that all declarations or creations of trust and grants of land shall be manifested

by writing, signed by the party holding the title thereto, will not allow an express trust in real estate to be established by parol agreement. See Williams et ux. v. Moodhard, 341 Pa. 273; Arndt v. Matz, 365 Pa. 41.

Defendant Lena Ardolino submits that since plaintiff's claim is based upon an oral promise to convey and an alleged breach thereof, plaintiff's cause of action could not be based upon the theory of a resulting or constructive trust. Defendant's contention can only be interpreted to mean that the express agreement takes the case out of the category of resulting trusts and puts it into the category of express trusts; and that the express trust being unenforcible, defendant should be allowed to keep the land. This contention would lead to the absurd result that because defendant expressly agreed to transfer the land to plaintiff, he can now keep the land; whereas if he made no such agreement, he could then be compelled to transfer the land under a resulting or constructive trust. It is indeed difficult to see why the presence of an oral agreement, which in itself supports a presumption of a resulting trust, should prevent such a trust from arising. On the other hand, if this reasoning appears unacceptable, we believe that sufficient facts have been presented by the pleadings to conclude that plaintiff's second cause of action is also based on the theory of a resulting or constructive trust.

Defendant sets forth that admitting the second cause of action is based upon a resulting or constructive trust, it is barred by the five-year statute of limitations set forth in the Act of April 22, 1856, P. L. 532, sec. 6, 12 PS §83, which provides that no action shall be maintained to enforce any implied or resulting trust as to realty except within five years after such trust accrued.

The following cases have held that the five-year statute of limitations which prohibits an imposition of an implied or resulting trust upon real estate is tolled by plaintiff's accupancy of the premises: Rayman v. Morris, 361 Pa. 583; Wosche v. Kraning, 353 Pa. 481; West, Admx., v. Young et al., 332 Pa. 248; Christy v. Christy, 353 Pa. 476; Fitzpatrick v. Fitzpatrick, 346 Pa. 202; White v. Patterson, 139 Pa. 429; Master v. Roberts, 244 Pa. 342.

In Clark v. Trindle et al., 52 Pa. 492, the court interpreted the above section of the Act of 1856 and at page 496 said:

". . . We think that neither in the words nor by interpretation founded on the mischief to be prevented by the statute, is a case within it, where the cestui que trust has possession and occupancy during the period in which the statute is running. . . ."

The pleadings clearly set forth that James Ardolino and his family have been in possession from the date of purchase of the realty by deed dated April 14, 1941, until he died intestate May 27, 1951.

In line with the above cases, this court holds that the five-year period, as set forth in the Act of 1856, supra, has been tolled because of the possession and occupancy of James Ardolino for the period set forth above. The establishment of a trust will depend upon evidence produced upon hearing.

To give such relief does not improperly infringe upon the policy declared by the legislature in the statute of frauds. It merely prevents the use of that statute as an instrument enabling one person to profit at the expense of another. The danger of perjured testimony is not sufficiently great to justify the unjust enrichment of the grantee which would follow from her retention of the property. These proceedings are in equity and no jury passes on the facts. The courts are slow to impose a trust unless convinced of the

truth of the claim; their sympathies are not so easily swayed as those of a jury might be.

The second and third preliminary objections, considered together in this opinion, will be overruled and defendants will be allowed 20 days to file answers.