ALLEN, Judge.
Petitioner seeks review of a final order of the Circuit Court of Broward County affirming a judgment of conviction and sentence entered against petitioner by the Municipal Court of Fort Lauderdale for violation of that city’s Code of Ordinances Section 19-10 concerning the unlawful possession of gambling paraphernalia.
Ordinance 19-10 of the Code of Ordinances of the City of Fort Lauderdale reads as follows:
“It shall be unlawful for any person to have in his possession, custody, or control in the City, any machine, device, paraphernalia, equipment, or things commonly used in gambling, or prohibited by the provisions of this chapter.”
It will thus be seen that the ordinance in question makes it unlawful for a person to have in his possession any machine, device, paraphernalia, equipment, or things commonly used in gambling.
The only question presented to this court for review is: where one has been charged with possession of paraphernalia and equipment commonly used in gambling and the only evidence offered by the prosecution is alleged bookkeeping records of bookmaking transactions, is such evidence sufficient to sustain a conviction?
Petitioner’s chief contention is that possession of bookmaking records as a matter of law is not a violation of an ordinance which makes it unlawful to possess paraphernalia and equipment commonly used in gambling. In other words, petitioner contends that bookmaking records do not come within the definition of the words “gambling paraphernalia” and “gambling equipment.” For reversal of the trial court’s conviction and subsequent affirmance thereof, petitioner relies on the Supreme Court’s decision in Cooper v. City of Miami, 1948, 160 Fla. 656, 36 So.2d 195, with which he contends said conviction is in conflict. The petitioner in the Cooper case had been charged with and convicted of a violation of a municipal ordinance in that he “ ‘did then and there unlawfully set up and keep a gambling device at which a game of chance, to-wit: betting on horse races was then and there played for money * * *.’ ” (Emphasis supplied.) The evidence submitted consisted of the defendant being observed by the arresting officer taking bets and paying off winners on certain horse races. The officer also observed the defendant receiving money for a bet and handing the bettor a bet slip on which was written the amount of the bet, the initials of the defendant and the horse upon which the bet had been placed. In reversing the conviction, the Supreme Court held that the prosecution had failed to present any evidence of possession of a gambling device but had proved only the different offense of taking bets upon a horse race. The specific charge was therefore not supported by the evidence. The following language from the opinion written by Justice Sebring in the Cooper case is pertinent to the definitional question with which we are here confronted.
“The gist of the charge upon which the petitioner was tried was the setting *263 up and keeping of a gambling device at which a game of chance was played for money. By the weight of authority, the term ‘gambling device’, as the term is generally employed in penal statutes or ordinances, means the tangible means, instrument, contrivance, or thing at or by which money may be lost or won, as distinguished from the game itself, and includes only such instruments or contrivances as are intended for the purpose of gaming, or such as are used to determine the result of the contest on which the wager is laid. See 24 Am.Jur. pp. 420, 424, Gaming and Prize Contests, Sections 31, 36. Such is the obvious meaning of ‘gambling device’ as the term is used in our own statutes and decisions. See Sections 849.01, 849.05, 849.14-849.16, 901. 19, Fla.Stat.1941, F.S.A.; Kirk v. Morrison, 108 Fla. 144, 146 So. 215; Pasternack v. Bennett, 138 Fla. 663, 190 So. 56. The manifest purpose and intent of a statute or ordinance forbidding the setting up and keeping of a gambling device at which games of chance are played for money is to prohibit not the gaming or gambling itself but the maintenance and operation of a device upon or by means of which gaming or gambling is permitted. See McBride v. State, 39 Fla. 442, 22 So. 711; Reinmiller v. State, 93 Fla. 462, 111 So. 633; Wilson v. State, 129 Fla. 827, 177 So. 216.”
We conclude that the holding in the Cooper case, supra, is controlling and requires reversal of the conviction.
In In re Teletype Mach. No. 33335, 1937, 126 Pa.Super. 533, 191 A. 210, it was held that a teletype enabling gamblers to ascertain results of horse racing events on which they had wagered was not subj ect to seizure as a “gaming device or apparatus” since the statute authorizing seizure is restricted to devices, apparatus, etc., as are used and employed for gambling in the sense that in using them, money is wagered, won or lost as a direct result of their employment or operation.
In Ives v. Boyce, 1909, 85 Neb. 324, 123 N.W. 318, 25 L.R.A.,N.S., 157, it was held that telegraph wire, blackboard and ticker used in a bucket shop were not gambling devices under a criminal statute because they were capable of lawful as well as unlawful use. The statute was construed as applying strictly to gambling houses and games of hazard in the narrowest sense.
In James v. State, 1911, 4 Okl.Cr. 587, 112 P. 944, 34 L.R.A.,N.S., 515, under an information charging defendant with con-: ducting a banking and percentage game played with devices for money, a conviction was reversed when the only proof showed that defendant conducted a “turf exchange” where patrons congregated and bet on horse races run elsewhere. It was also held that a telegram for receiving and a blackboard for posting the result of horse races as well as the wager tickets did not constitute devices with which alleged unlawful games could be conducted. ¡
We conclude that a writ of certiorari should be awarded quashing the order brought here for review, with directions that an order be entered by the Circuit Court of Broward County reversing the judgment and vacating the sentence entered and imposed by the Municipal Court of the City of Fort Lauderdale.
SHANNON, C. J., and WHITE, J., concur.