In Re: Petition of Superintendent of Police of the City of Philadelphia for 'Order to Destroy Gambling Implements.

Argued March 20, 1934.

 Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*J. Kennard Weaver,* for appellant.

*Thomas B. K. Ringe,* and with him *A. Evans Kephart* and *Ernest Lowengrund,* Assistant City Solicitors, *David J. Smyth,* City Solicitor, *John M. Maurer,* Assistant District Attorney, and *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY CUNNINGHAM, J., July 13, 1934:

Mills Novelty Company, the owner of approximately three hundred nickel slot machines seized by police officers of the City of Philadelphia as gambling devices, has appealed from an order of the court below adjudging them forfeited and directing that they be publicly destroyed.

The machines were seized while in the possession and use of numerous lessees. The representatives of the city and the Commonwealth rely upon Section 55 of the Penal Code of March 31, 1860, P. L. 382, 397, as amended by the Acts of March 26, 1923, P. L. 32, and April 7, 1925, P. L. 185, 18 PS §1441, and Section 60 of that code (p. 398), 18 PS §1445.

By Section 55 it is made a misdemeanor for any person to set up or establish any game or device of address, or hazard, with cards, dice, etc., or any other instrument, article or thing whatsoever, heretofore or hereafter invented, used and employed, "at which money or other valuable thing may or shall be played for, or staked or betted upon."

By that portion of Section 60 quoted below,* the

---

* "It shall and may be lawful for any sheriff, constable or other officer of justice, with or without warrant, to seize upon, secure and remove any device or machine of any kind, character or description whatsoever, used and employed for the purposes of unlawful gaming as aforesaid, [Section 55] and to arrest, with or without warrant, any person setting up the same. And it shall be the duty of such sheriff, constable or other officer, to make return, in writing, to the next court of quarter sessions of the

seizure by any officer of justice, with or without warrant, of any device or machine used and employed for the purposes of unlawful gaming, is authorized, and an appropriate method of procedure, consisting of a return to the next court of quarter sessions of the proper county and an adjudication, after a hearing, is provided.

On February 8, 1934, the superintendent of police of the City of Philadelphia filed in the court below his return and petition, setting forth that members of the bureau of police in the performance of their duty had seized, in the possession and use of various persons, three hundred slot machines used and employed for the purposes of unlawful gaming, (the dates of seizure, the names and addresses of the persons in whose possession and use they were found, and the name and number of each machine being set forth in a schedule attached to the petition), and praying the court to adjudge the machines forfeited and order them to be publicly destroyed.

A time for hearing such parties in interest as might appear was fixed. When the matter came on for hearing, counsel for appellant entered his appearance de bene esse—stating that he desired to raise the question of the jurisdiction of the court—and advised the court that appellant was the manufacturer and owner of the machines included in the return and that the persons in whose possession they were found were lessees. The learned presiding judge, LAMBERTON, J., holding that the court had jurisdiction under the statute, proceeded with the hearing.

proper county, setting forth the nature and description of the device or machine so seized upon, and the time, place and circumstances under which such seizure was made; and the said court, upon hearing the parties, if they should appear, if satisfied that such device or machine was employed and used for the purpose of unlawful gaming as aforesaid, shall adjudge the same forfeited, and order it to be publicly destroyed, and at the same time order such reasonable costs and charges to the seizing officer" etc.

The headings and the first line of the exhibit attached to the return read:

"DATE

1-26-34

NAME & ADDRESS

Sol Finkelstein, Northeast corner 10th & Walnut

SLOT MACHINE

5 ct. Mills Novelty Mint No. 331253."

With a single exception, the machines listed are described either as "Mills Mint Vending" or "Mills Novelty Mint," and the distinguishing number found upon each machine is set forth.

The machine described in the above quoted first line of the exhibit was produced in court and identified by the officers, Dombrowski and McAlpin, who seized it while in the possession and use of Sol Finkelstein, then conducting a drug store at the corner of 10th and Walnut Streets.

Examination of the testimony as a whole, convinces us that there was competent evidence to support the following findings of fact, as stated in the opinion of the court below: "One of the machines was brought into court and offered in evidence. It was a large machine and was operated by the insertion of a nickel or a slug in a slot. If a nickel was inserted, certain parts of the machine would revolve, presenting to view a combination of fruits, etc. In every case where a nickel was deposited, a small bag of mints would come out of the machine, and sometimes nothing else. On other occasions, slugs, which were about the size of a nickel, but with a hole in the center, would come out in varying numbers. The machine could then be played with the slugs, and when so played, it would revolve exactly the same as if a nickel had been inserted, but no mints would come out. The only possibility from the playing of a slug was the receipt of more slugs. ......

"A mechanical expert of the department of public safety [Cavenaugh] produced in court a similar [seized] slot machine. He testified that by an interior mechanical adjustment, requiring about two minutes time, the machine had been changed, so that the result of playing slugs and nickels would be the same. The altered machine was operated in court, and after several plays, nickels came out instead of slugs, so that a man playing a nickel might get mints and nothing else, or he might get back a number of nickels."

The police officer who identified the slot machine, first above referred to, testified Finkelstein had redeemed each of the slugs (sometimes referred to as "tokens") at the rate of five cents. He said: "After playing this machine I hit a combination and I won sixteen slugs; I played one back again and I cashed fifteen slugs for the sum of seventy-five cents."

Thereupon, counsel for appellant conceded that evidence of the redemption, in money or merchandise, of the slugs ejected by any machine would justify an order for the destruction of that machine as a gambling device, and offered to go over the list with the superintendent of police—agreeing to make no objection to the destruction of machines from which slugs had been redeemed. The reply of counsel for the Commonwealth was, "Our evidence may vary to some extent, but the evidence is that every machine in the petition is a gambling device." We do not understand this to be a statement that the Commonwealth was prepared to show that slugs had been redeemed from each machine, but, under the conclusions we have reached in this case, the point is not material. As the hearing proceeded, one of the contentions of counsel for appellant obviously was that the machines could not "be made to eject nickels." He is recorded as stating, "If this machine ejects

nickels—whether played with slugs or nickels, then it is a gambling device."

After the demonstration that by using a small screw-driver to bend back a certain prong in the mechanism of one of the machines in court it would eject nickels as well as slugs, the record continues: "The Court: Are you convinced, Mr. Weaver? Mr. Weaver: [counsel for appellant] I am willing to have that as it is if he will take the machine here and open it. The Court: I am convinced; now you may file your brief on the question of jurisdiction. Mr. Ringe: [counsel for the city] As I understand, jurisdiction is the only question involved. The Court: Yes."

In addition to the detailed evidence with respect to the two machines above referred to, Inspector John J. Duffy, in charge of all slot machines seized and brought into City Hall, testified that the other machines included in the return were of the same type as the one identified by Dombrowski and McAlpin and the machine so adjusted by the witness Cavanaugh that it ejected nickels.

It cannot be contended by anyone that these machines are mere vending machines through the use of which the patron receives a certain and uniform return in value for the coin deposited therein.

From a reading of the evidence, exclusive of that relative to the redemption of slugs and the convertibility of the machines into pure gambling devices, it is clear that the element of chance is always present; whether the player will receive anything in addition to a package of mints does not depend upon the skill with which the apparatus is operated but is determined solely by chance; and if slugs are delivered the number received (varying from one to twenty) is also purely a matter of chance.

Printed matter on the front of the machine reads: "Watch the wheel for your fortune; the tokens re-

ceived from this machine have no value but may be used for the customer's sole amusement. Watch the rollers and have your fortune told. Your coin buys a confection. Deposit coin at right hand side and receive a confection. Confection not vended with amusement tokens.'' On one side of the token, or slug, is stamped, ''Property of O. K. Vender,'' and on the other, ''Loaned for Amusement Only.''

An excerpt from the testimony of Inspector Duffy relative to the results of operating the machines reads: ''Q. Across the face of the machine you can see the tokens and nickels you have deposited, in the process of going through the machine? A. Yes. Q. Below that are three windows showing three revolving symbols? A. Yes. Q. Then there is a chart showing what will be received by the player when a certain combination of symbols is displayed after a play is over in the three windows? A. Yes. Q. How are they written? A. Well, for instance if three plums you get 14 tokens. Q. Does it say 'tokens' or fourteen—A. It says '14'—but it pays tokens. Q. What is this? A. That is the jack pot—20 tokens. Q. Then a different combination takes 18? A. 18. Q. A different combination takes 14? A. 14. Q. And another ten? A. Yes. Q. Another five? A. Yes. Q. Another three? A. Yes.''

In its brief, appellant says the metal tokens are intended to give the operator additional amusement in the form of having his pretended ''fortune'' told. We quote: ''This 'fortune' telling feature of the machine is obtained through a glass window at the top of the machine plainly visible to the purchaser and through which a set of three (3) revolving cylinders is displayed, each cylinder moving independently of the other. When the machine is operated, the cylinders revolve at different speeds and printed thereon in letters are a series of incomplete sentences, and

when the cylinders come to rest after having been revolved, they form, reading from left to right, in a line with a fixed finger indicator, a complete sentence, telling in a brief way the pretended 'fortune' of the customer. Many hundreds of combinations, each constituting a different 'fortune,' may thus be obtained for the amusement of the customer, a different 'fortune' appearing after each turn of the cylinders. These 'fortunes' take the form of humorous and witty sayings or prophesies.''

The statement that the tokens ''have no value'' is self serving and its truth may well be questioned. Doubtless, it is made for the purpose of endeavoring to eliminate any element of value from appellant's proposition and thereby prevent a combination of chance and value—a combination which would be fatal to its contention. Whether, in staking a nickel upon a machine in the hope of receiving one or more tokens, the operator is playing for a ''valuable thing,'' within the meaning of Section 55, is a question which has caused some difference of opinion among the trial courts of our state and the appellate courts of other jurisdictions.

In a well considered opinion reviewing a number of authorities, Judge Evans, formerly president judge of Cambria County, said in the case of Com. v. Goldsmith, 17 D. & C. 145: ''Under our act of assembly, there is nothing to indicate what the value of the property gambled for must be. It is true that the metal discs in small quantities would not have much value, but that they do have actual intrinsic value is beyond dispute, and that there is a hazard as to the winning of some property in addition to the receipt of the package of mints is admitted. As we understand the law, an apparatus is a gambling device where there is anything of value to be won or lost, no matter how small the intrinsic value, as the result of chance. Bou-

vier's Law Dictionary defines a gambling device as 'any contrivance or apparatus by which it is determined who is the winner or loser in a chance or contest on which money or value is staked or risked.' " Cf. Ad-Lee Company v. Meyer, 294 Pa. 498, 144 A. 540.

In State ex rel. Manchester v. Martin, 211 Iowa 462, 233, N. W. 486, it was said: "Among the patrons of the machine, some, if not many of them, might prefer the feature of amusement rather than the package of mints. If these discs were made 'good' for admission to a movie or other place of amusement, their character as a gambling device would be readily recognized. Something akin thereto was their actual function as used. The 'movie' was furnished instanter in response to the call of the disc. It must be held, therefore, that the machine in question was a gambling device within the meaning of the statute."

The machines, several of which were produced at bar during the oral argument of this appeal, are about the size of an ordinary cash register. When we note that the greater portion of the machine, as well as the most elaborate and intricate mechanism therein, is devoted to the distribution and delivery, by chance, of tokens, it is a rather severe tax on our credulity to be asked to accept appellant's contention that the token and so-called amusement end of the affair is a mere advertising adjunct to the sale of mints. On the contrary, we think the evidence, as a whole, warrants the conclusion that the sale of mints is merely a cloak for the concealment of the real purpose served by the manufacture and distribution of the machines— the setting up of a gambling device.

This inference is strengthened by the statement made in appellant's brief that as recently as two years ago it manufactured and distributed a slot machine which, by the removal of a single pin, could be converted from what was apparently a mere mint vend-

ing machine into a gambling device, ejecting both tokens and nickels to the player. The machine referred to in Com. v. Goldsmith, supra, was of this type. The further statement is made that the present machines were manufactured to replace the convertible ones and have no removable parts which can be taken out in order to change their operation. Under the evidence in this case, it would probably take a slightly longer time, and require more effort, to unlock the back of a machine and change the position of the prong than it would to remove a single pin, but it has been demonstrated that it is quite possible to convert the new machines into what would universally be conceded to be gambling devices. Greater ingenuity and higher artistic skill may have been displayed in the construction of the latest models, but the essential characteristics of the machines are unchanged.

The public policy of this Commonwealth relative to the manufacture and use of any device or instrumentality, heretofore or hereafter invented, with which money, or anything of value, may be played for, or staked or betted upon, has been declared by our legislature in a series of enactments.

Some of them are intended to provide a punishment for the individuals setting up or establishing such devices; others are aimed at the devices, themselves, and authorize their seizure in the hands of their owners or possessors and their public destruction. By Section 56 of the Penal Code of March 31, 1860, P. L. 382, 398, it is enacted that "any person [who] shall keep or exhibit any ...... device or apparatus, to win or gain money or other property of value," shall upon conviction be punished by fine and imprisonment.

Section 55 of the same act has already been mentioned. It contains the significant proviso that it shall not be construed to apply "to games of recreation and

exercise, such as billiards, bagatelle, ten pins, et cetera, where no betting is allowed."

Both of these enactments provide for the indictment of persons violating any of their provisions, but neither authorizes the confiscation of gambling devices.

By Section 59, however, the seizure of gambling devices, under search warrants, issued along with warrants for the arrest of individuals, is authorized. Then comes Section 60, here involved and construed by this court in Com. v. Kaiser, 80 Pa. Superior Ct. 26, empowering any officer of justice to seize any gambling device or machine, with or without a warrant. This section was added to the previously existing system created by the Act of February 16, 1847, P. L. 111, (repealed by the Penal Code) and was manifestly intended to afford additional facilities to officers of justice in extirpating the offence.

Finally, the Act of April 29, 1925, P. L. 357, 18 PS §1447, made it a misdemeanor to "make, manufacture, or assemble any ...... slot machine, or any machine or device used or intended to be used for gambling." The legislative use in this act of the broader phrase, "intended to be used," is not without significance.

As we read the able and voluminous brief of counsel for appellant, his primary contention is that the evidence introduced in behalf of the petitioner was insufficient to support the order because it was not shown, with respect to each and every machine seized, either that tokens obtained therefrom had been redeemed or the mechanism altered.

We would be fully justified, under well established principles, in declining to consider this contention. The question of the sufficiency of the evidence was not raised in the court below. On the contrary, the above quotations from the record indicate clearly that counsel for appellant led the presiding judge and counsel for petitioner to believe that the only issue before

the court at the conclusion of the testimony of the mechanic, who demonstrated how readily the mechanism could be changed, was that of its jurisdiction, and that the only ground upon which the making of an order was opposed was that the court was without jurisdiction to order the destruction of any machines except the two as to which there had been detailed testimony. (Cf. Fleischer v. Maryland Cas. Co., 108 Pa. Superior Ct. 461, 164 A. 824.)

Granting that the objection to the jurisdiction was made in good faith, it was never pressed below nor is it raised upon this appeal.

Moreover, it is stated in the opinion of the court below that counsel for appellant advised the presiding judge, shortly after the conclusion of the hearing, that he had decided he would not file a brief on the question of jurisdiction, but intended to apply to the federal courts for an order restraining the destruction of the machines. Later on the same day, he announced he had decided to abandon his proceeding in the federal court and requested that an opportunity be afforded him to present testimony "to the effect that the machines in question were not in reality gambling devices." Appellant's counsel was then informed by the presiding judge that he would receive and consider any testimony offered; four days later the court was advised that appellant did not desire to present any evidence but would appeal to this court if a final order of forfeiture should be made.

Upon consideration of the return and petition, and the testimony taken in support thereof, the court below entered its order concluding as follows: "The court finds that these slot machines are gambling devices and are used for the purpose of unlawful gaming; the court adjudges them forfeit and orders that all of the said slot machines be forthwith publicly destroyed." From this order appellant promptly ap-

pealed to this court and, upon its application, we directed that the appeal operate as a supersedeas, pending argument and disposition of the case.

The evidence for the petitioner was neither contradicted nor qualified in any way, although appellant was afforded ample opportunity to attack it.

In considering its sufficiency, it must be borne in mind that this proceeding is *in rem* and not under an indictment against any of the lessees upon a charge of setting up a gambling device.

The statutory test is that petitioner's evidence must be such as to "satisfy" the court that the machines were "employed and used for the purpose of unlawful gaming."

Granting that the evidence was not as detailed and complete as it might have been, or as it probably would have been if its sufficiency had been questioned below, we think it was sufficient to satisfy an unbiased mind to that degree of certainty which a judicial disposition of the issue required. There was positive and uncontradicted testimony that the machines in question were all of the same type and, in our opinion, the evidence, as above reviewed, was sufficient to satisfy a court that the machines were, within the meaning of the Act of 1925, supra, manufactured by appellant with the intent that they should be used for gambling, and that they were so employed and used, within the intendment of the Act of 1860, supra.

From what we have said about the machines, themselves, and their operation, even as described in appellant's brief, it follows that it was not necessary for petitioner to show, under the issue then before the court, that each machine on the list had actually been adjusted to discharge coins or that tokens received from it had been redeemed. The issue here was between the manufacturer and owner of the devices and the public authorities and not between the Common-

wealth and a possessor and user of a machine—a distinction which, obviously, affects both the quality and quantum of evidence necessary to support the affirmative of the issue.

We are not convinced that any of the authorities cited in behalf of appellant should be followed. In Com. v. Bair, 37 Dauphin Co. Repts. 334, it is expressly stated that there was no evidence that the slot machine there involved was convertible or that tokens therefrom had been redeemed. Moreover, that proceeding was an indictment for an alleged violation of Section 55.

By reason of the enactment of certain legislation and an order of the Supreme Court of the United States, both subsequent to the oral argument, the case of Mills Novelty Company v. O'Ryan, strongly relied upon by counsel for appellant, is no longer authority for anything. That case began with an injunction issued by the U. S. District Court for the Eastern District of New York restraining the Commissioner of Police of the City of New York, and the officers under him, "from in any manner interfering with, seizing or destroying any 'Mills Non-Convertible Vender' machine, or molesting or arresting the possessors thereof, or threatening so to do, unless it is actually engaged in gambling."

The Circuit Court of Appeals for the Second Circuit affirmed (68 F. [2d] 1009) on February 13, 1934. The Supreme Court, upon O'Ryan's petition, granted a certiorari. While the case was there pending, an amendment to Section 982 of the Penal Laws of New York was enacted and approved, making it a misdemeanor to manufacture, transport, sell, rent, operate, etc., any slot machine or device, as therein defined.*

---

*"2. Any machine, apparatus or device is a slot machine or device within the provisions of this section if it is one that is adapted, or may readily be converted into one that is adapted, for use in such a way that, as a result of the insertion of any

The Supreme Court disposed of the appeal by an order, dated May 21, 1934, reading, in part, as follows: *"Per Curiam:*—In view of the effect of Chapter 317, N. Y. Laws of 1934, upon the decree of injunction herein the decree of the Circuit Court of Appeals is reversed and the cause is remanded to the District Court with direction to dismiss the bill of complaint, without prejudice and without costs to either party."

As the questions here involved are of importance to public authorities, as well as to the owner of the machines, and have not been decided by either of our appellate courts, we have stated, perhaps at unnecessary length, the reasons for our conclusion that the slot machines covered by the return and petition are, essentially and inherently, gambling devices and therefore subject to confiscation under the statute.

The order is affirmed.

piece of money or coin or other object such machine or device is caused to operate or may be operated, and by reason of any element of chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, credit, allowance or thing of value, or any check, slug, token or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance or thing of value, or which may be given in trade, or the user may secure additional chances or rights to use such machine, apparatus or device; irrespective of whether it may, apart from any element of chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise, indication of weight, entertainment or other thing of value."