Commonwealth *v.* Keppel et al., Appellants.

Argued May 3, 1937.

Before KELLER, P. J., CUNNINGHAM,

BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Harris C. Arnold,* and *S. V. Hosterman,* with them *S. R. Zimmerman* and *John A. Coyle,* for appellants.

*K. L. Shirk,* Assistant District Attorney, with him *Chas. W. Eaby,* District Attorney, for appellee.

OPINION BY CUNNINGHAM, J., July 15, 1937:

Robert F. Keppel and Leo A. Ruof were indicted in their individual capacities under two indictments, the first at No. 30 June Term, 1936, of the court below, and the second at No. 31 of the same term and year. The indictment at No. 30 contained two counts, each drawn under section 56 of the Penal Code of March 31, 1860, P. L. 382, 18 PS §1421.[1] The first count charged that in April, 1936, defendants did unlawfully "keep or exhibit" gambling devices, "to win or gain money or other

---

[1] "If any person shall keep or exhibit any gaming table, establishment, device or apparatus, to win or gain money or other property of value, or aid, assist or permit others to do the same; or if any person shall engage in gambling for a livelihood, or shall be without any fixed residence, and in the habit or practice of gambling, he shall be deemed and taken to be a common gambler, and upon conviction thereof shall be sentenced to an imprisonment, by separate or solitary confinement at labor, not exceeding five years, and to pay a fine not exceeding five hundred dollars."

property of value," namely, "2,125 punch cards and 664 punch boards"; the second charged them with having aided, assisted or permitted one H. W. Hauck, and other persons, to "keep or exhibit" the gambling devices specified in the first count.

The second indictment contained a single count, drawn under the 55th section of the Code, as amended by the Acts of March 26, 1923, P. L. 32, and April 7, 1925, P. L. 185, 18 PS §1441, and charging that the defendants did "unlawfully set up or establish, or cause to be set up or established" in the gas station of Hauck "a game or device of address, or hazard, to wit: punch boards and other instruments, at which money or other valuable thing was played for, or staked, or betted upon." The indictments were properly consolidated for trial.

As a result of the trial defendants were acquitted on the indictment at No. 31, but convicted as indicted at No. 30. Their motions in arrest of judgment or for a new trial were overruled and this appeal is from the judgment of the court below suspending jail sentences and directing each defendant to pay the costs and a fine of $300.

Appellants neither took the stand nor attempted to controvert in any way the evidence introduced by the Commonwealth; their evidence consisted solely of the testimony of twelve witnesses to the good reputation of each appellant.

Section 56 of our Penal Code is one of the sections declarative of the public policy of the Commonwealth relative to the manufacture, keeping, exhibiting and setting up of any device, heretofore or hereafter invented, through the operation of which money or anything of value may be played for or staked or betted upon. We had occasion to consider these sections several years ago: *In Re Petition of Supt. of Police,* 113 Pa. Superior Ct. 520, 173 A. 753. In section 56 three

offenses are described and conviction of any one or more of them subjects the offender to the penalties prescribed. These offenses are: (a) keeping or exhibiting gambling devices; (b) aiding, assisting, or permitting others to do the same; and (c) being a "common gambler." We are here concerned only with the first and second, as charged respectively in the first and second counts of the indictment upon which appellants were convicted and sentenced.

The Commonwealth's evidence was to the following effect: A traveling salesman representing a corporation, engaged in the wholesale candy business in the City of Lancaster under the corporate name of "Keppel and Ruof, Inc.," procured an order from H. W. Hauck, the proprietor of a gas station at Neffsville, for an assortment of candy. When the candy was delivered in packages and boxes Hauck received along with the consignment a "400-hole-punch-board." Hauck arbitrarily selected certain numbers between one and four hundred and designated them on the board as the winning numbers; the board was then made accessible to any person desirous of playing it. Subsequently a search warrant was issued for the premises of the corporation. When the officers arrived to execute it, they found one of the appellants, Ruof, upon the premises, but did not see the other appellant, Keppel, there at any time. The officers found 664 punch boards and 2,125 punch cards, some of them in cartons close to the order counter and the remainder on a shelf in a closet. The punch boards and cards varied in size and each had numbers ranging from 1 to 100, 200, etc., concealed, in the case of the cards, by a paper pasted over them and, as to the boards, by small pieces of paper rolled up tight and stuck in the holes. The method of operation was thus described by witnesses for the Commonwealth: "A. As to the punch boards, there is a small piece of paper, rolled up very tight, and stuck in a hole in the board. You punch

that out, and, if you have a lucky number, you win,—sometimes it is cigarettes, sometimes it is money, or candy, or whatever the prizes are. ...... Q. And are the cards operated in the same way? A. In the same way, only you pull the little slip of paper off of the card, instead of punching it out of the board." Hauck testified he operated, in the manner indicated, not only the punch board referred to specifically in the testimony but also other boards previously received from the same source and gave prizes of candy when a player punched a winning number. There was testimony that the amounts staked by persons desiring to play these various devices ranged from one to five cents. We think there was ample evidence that the punch cards and punch boards seized, some of which were produced in court, were gambling devices subject to seizure under the provisions of sections 59 and 60 of the Act of 1860, supra; *In Re Supt. of Police,* supra. There is nothing in the testimony from which it could be inferred that they could be used for any purpose other than gambling.

We need not pass upon the contention of counsel for appellants that proof of mere possession of these devices would not sustain a conviction under section 56. There is evidence that the corporation here involved did more than merely keep or possess the punch cards and punch boards. From the evidence, a jury could reasonably find that it not only had the devices in its possession but also "exhibited" and disposed of them in order to increase the sales of its product. Moreover, the second count charged, and the proofs indicated, that appellants "aided and assisted" Hauck, one of its customers, to "keep and exhibit" at his place of business several of the devices for the purpose of affording any person so inclined an opportunity to gamble with them.

The difficulty with the Commonwealth's case is not that it failed to prove that the corporation unlawfully kept and exhibited and assisted its customers to keep

and exhibit gambling devices, but that it failed to show what, if any, relation the individuals named in the indictment, Robert F. Keppel and Leo A. Ruof, bore to the offending corporation, or what, if any, responsibility they or either of them had for its acts. Keppel was not even shown to have been upon the premises.

Notwithstanding this lack of evidence, the trial judge charged: "Now, in regard to that charge, [indictment at No. 30] you have the testimony about the finding of these punch cards and punch boards on the premises of Keppel & Ruof, Incorporated, at a time when Mr. Ruof was there and Mr. Keppel was not there. I desire to say to you, as applying to both indictments in this case, that a corporation's officers committing a criminal act are individually responsible and may be individually indicted as though the corporation did not exist." The trouble is that a careful examination of the record fails to disclose a particle of evidence indicating that either Robert F. Keppel or Leo A. Ruof were officers of the corporation. As an abstract proposition of law, it may be said, as did the trial judge in his opinion refusing a new trial, that, "Individuals are subject to indictment for acts done under the guise of a corporation where the individuals personally so dominate and control the corporation as to immediately direct its action." But that principle cannot be applied in this case because there was absolutely no testimony that the individuals named in the indictment were officers of the corporation, or that either of them, in any capacity, so dominated and controlled it "as to immediately direct its action." By the tenth point submitted in behalf of each appellant and at the close of the charge the trial judge's attention was directed to the fact that the evidence showed the devices had been obtained from a corporation and not from the individuals named in the indictment, but he repeated and emphasized the instruction. In short, we here have a case in which the trial judge

in his charge unwarrantedly *assumed* the individuals on trial before him were officers of the corporation shown by the testimony to have kept and exhibited the gambling devices in question and submitted the case to the jury upon the theory that there was evidence from which it could find that appellants, personally, so controlled the corporation as to be responsible for its acts. There was no such testimony. Even if it had been shown that appellants were executive officers of the corporation, it would have been necessary for the Commonwealth to prove, directly or indirectly, that the officer, or officers, whose conviction was sought had knowledge of the illegal acts: *Com. v. Weiler,* 84 Pa. Superior Ct. 481. As in *Com. v. Light,* 195 Pa. 220, 45 A. 933, the charge stated, "as an established fact in the case," a matter concerning which there was no evidence, and one upon which the guilt of each appellant would largely depend in the minds of the jury.

The failure of the Commonwealth to show that appellants, or either of them, were officers of the corporation and as such, or in some other capacity, so dominated and controlled it in the unlawful keeping, exhibiting and distribution of the gambling devices described in the indictment as to make them personally responsible, was, in our opinion, fatal to its case.

The judgment against each appellant is reversed and they are discharged.